MAURIE STARRELS AND DORIS W. STARRELS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 77031. Filed January 26, 1961.

*Robert W. Kenny, Esq.*, for the petitioners.
*Charles F. Quinlan, Esq.*, for the respondent.

OPINION.

RAUM, *Judge:* The Commissioner determined a deficiency in petitioners' income tax for the year 1956 in the amount of $1,530.87. The only question is whether an amount received in 1956 by petitioner Doris W. Starrels from Loew's, Inc., in exchange for a release of any claims she might have for invasion of her right of privacy constitutes taxable income. The facts have been stipulated.

Petitioners Maurie and Doris W. Starrels, husband and wife, reside at 6531 West Fifth Street, Los Angeles 48, California. They filed their joint income tax return for the calendar year 1956 with the district director of internal revenue, Los Angeles, California.

Petitioner Doris W. Starrels, hereinafter referred to as Doris, and her sister, Lila Berman, are the daughters and only issue of the late Commander Frank W. Wead, USN.

Loew's, Inc., hereinafter referred to as Loew's, desired to produce a motion picture concerning naval aviation and ultimately did produce and market such a picture. It intended the photoplay to be "based on, adapted from, or using as a springboard the life story" of Commander Wead.

In 1954 in furtherance of this purpose, Loew's purchased from the Beverly Hills National Bank and Trust Company, trustee under the will of Commander Wead, the literary material entitled "We Plaster the Japs" which was written by Commander Wead and published in the September 1944 issue of American Magazine.

Loew's also entered into an agreement with Doris and with Lila Berman on November 9, 1954. This agreement consisted of two documents: A letter from Loew's to Doris and Lila referred to as an option and a letter from the sisters to Loew's referred to as a release. Among other things, the terms of the agreement provide:

(a) Doris and Lila agreed to permit Loew's to produce, release, distribute, and exhibit a motion picture based on the life of their late father, Commander Wead.

(b) Doris and Lila agreed to permit Loew's to depict their deceased father, themselves, and other members of their family in the photoplay and in the advertising and publicity thereof and to use actual names or fictitious names for themselves and other members of their family.

(c) The sisters promised that at no time would they claim or assert that the photoplay or any matter therein contained or any use made by Loew's of the names, likenesses, pictures, or characterizations of their father, themselves, or other members of their family under the agreement constituted a violation of any of their rights, including their rights of privacy.

(d) Doris and Lila agreed to deliver to Loew's such material in the way of photographs, letters, family documents, facts, or other material or information and suggestions which were available and which could be helpful in the preparation of the motion picture.

(e) The sisters agreed that during the life of the agreement they would not authorize others to produce or exhibit any motion-picture photoplay nor would they consent to the portrayal, depiction, or impersonation of their father or of themselves in any other motion picture.

(f) Loew's was further granted the right to advertise, promote, and exploit the photoplay by all means customarily used in the trade.

(g) Doris and Lila were to receive $2,400 jointly upon the execution of the agreement and were to be paid further sums upon the happening of specified events and/or upon the satisfaction of certain conditions.

In 1956 Loew's produced and distributed through the United States a feature motion picture entitled "The Wings of Eagles" which depicted events taken from the life of Commander Wead.

Pursuant to the agreement of November 9, 1954, Loew's paid Doris the sum of $5,800 in 1956. On her 1956 joint income tax return, Doris noted this receipt as follows: "$5,800.00 received from Loew's, Inc. M.G.M. Pictures as payment for invasion of personal family rights—not included as taxable income." Respondent in his deficiency notice to petitioners determined that the entire amount of the receipt from Loew's should have been included in taxable income.

Petitioners' sole contention is that a payment made for a consent to an invasion of privacy does not constitute taxable income. The contrary has been decided. *Damon Runyon, Jr.* v. *United States*, 281 F. 2d 590 (C.A. 5); *Ehrlich* v. *Higgins*, 52 F. Supp. 805 (S.D.N.Y.); *Meyer* v. *United States*, 173 F. Supp. 920 (E.D. Tenn.); *Helen D.*

*Miller*, 35 T.C. 631, decided this day. In each of these cases, the payments were held to result in the receipt of ordinary income. We believe the logic of these cases is controlling in the instant case, and thus we think the Commissioner correctly determined that the petitioners should have included the disputed $5,800 in taxable income in 1956.

The factual situation in the present case bears a striking resemblance to the facts in the *Ehrlich*, *Meyer*, and *Miller* cases.[1] Here, as in those cases, a motion picture company made certain payments connected with the production of a partially biographical photoplay in exchange, at least in part, for a release of any right-of-privacy claims that the payees might assert based on the resulting motion picture. Here, as was also true in those cases, there is no evidence whatsoever that the resulting motion picture in fact injured or damaged the payee by an invasion of her right of privacy or in any other way.

Petitioners argue that if damages paid for a consummated invasion of the right of privacy would not be taxable, payments made pursuant to an agreement which included a consent to such an invasion should be equally exempt. Such an argument was specifically rejected in both *Ehrlich* and *Meyer*. In the instant case, Loew's was granted the right to invade Doris' right of privacy by agreement, but there is no evidence that the resulting motion picture released by Loew's in fact invaded her right of privacy in any manner. If the payments based on this agreement could be made tax exempt by merely referring to a right of privacy which was never invaded and possibly never intended to be invaded, the narrowly conceived statutory exclusion for damages on account of "personal injuries" (sec. 104(a)(2), I.R.C. 1954) [2] would be expanded beyond its normal meaning. We think that Congress intended no such result.

Whether money paid to obtain a release for a right-of-privacy invasion in advance of such an invasion should be excluded from taxable income where there is proof that an invasion of privacy actually followed—is a question not raised by the facts in the present case. It may well be that the voluntary advance waiver of one's personal rights for compensation takes the case outside the purview of section 104(a)(2). Thus, one may receive compensation for allowing medical experiments upon his body in circumstances that would constitute a tort if his prior consent had not been given. We have considerable doubt whether it was the purpose of section 104(a)(2) to remove

---

[1] Unlike *Runyon*, it has not been argued here that the payments involved the rights of the deceased father. Unlike *Miller*, it has not been argued here in petitioners' behalf that a capital asset was sold nor in respondent's behalf that personal services were compensated.

[2] The legal basis for petitioners' claim that the amount received was nontaxable is not clearly articulated in their brief. We think that the payment for surrender of the right of privacy consists of gross income under section 61, and no statutory provision other than section 104(a)(2) has been suggested as a basis for excluding the payment from gross income.

such compensation from the category of taxable income. However, that is a question that need not be reached on this record. Suffice it to say for purposes of deciding this case, we think no valid claim for exclusion may be made in this area without some showing of an injury which has been sustained. This the petitioners have wholly failed to do.

*Decision will be entered for the respondent.*