**Maurie STARRELS and Doris W. Starrels, Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

No. 17358.

United States Court of Appeals Ninth Circuit.
May 25, 1962.

Kenny, Morris, & Ibanez, Robert S. Morris, and Robert W. Kenny, Los Angeles, Cal., for petitioner.

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Harold M. Seidel, and William Friedlanders, Attys., Dept. of Justice, Washington, D. C., for respondent.

Before BARNES, JERTBERG and BROWNING, Circuit Judges.

BROWNING, Circuit Judge.

The Tax Court decision before us for review was founded upon a stipulation disclosing the following facts: Doris W. Starrels is the daughter of the late Commander Frank W. Wead. Loew's, Inc. wished to produce a motion picture about naval aviation. Loew's agreed to pay Mrs. Starrels certain sums of money in return for her consent to the portrayal of her father, herself, and other members of the family in the proposed movie. Loew's subsequently produced a movie "in which was depicted events taken from the life of Commander Wead," and in due course made the disputed payment.

The question presented to the Tax Court, and to us, is whether the payments which Mrs. Starrels received from Loew's fell within the terms of 26 U.S. C.A. § 104(a) (2), which excludes from a taxpayer's gross income "the amount of any damages received (whether by suit or agreement) on account of personal injuries * * *." The Tax Court held that they did not, and we agree.

Mrs. Starrels contended before the Tax Court that damages for invasion of a taxpayer's right of privacy are exempt from taxation under Section 104(a) (2), and that payments made pursuant to a prior consent to a future invasion of such rights should also be exempt. But the Tax Court pointed out that there was no evidence that Mrs. Starrels' right of privacy had in fact been invaded. The Tax Court concluded that if payments "could be made tax exempt by merely referring to a right of privacy which was never invaded and possibly never intended to be invaded, the narrowly conceived statutory exclusion for damages on account of 'personal injuries' * * * would be expanded beyond its normal meaning. We think that Congress intended no such result."

The Tax Court expressly reserved the question of whether Section 104(a) (2) would exempt from taxation money paid pursuant to a prior agreement to an invasion of privacy where an invasion of privacy in fact subsequently occurred.

As Mrs. Starrels concedes, the right of privacy is personal, and the payments involved *could constitute* "damages received * * * on account of personal injuries" of Mrs. Starrels only if they compensated Mrs. Starrels for an invasion of her own privacy, rather than the privacy of her father. James v. Screen Gems, Inc., 174 Cal.App.2d 650, 344 P.2d 799 (1959); Metter v. Los Angeles Examiner, 35 Cal.App.2d 304, 310, 95 P.2d 491, 495 (1939). See also Runyon v. United States, 281 F.2d 590, 592 (5th Cir. 1960).

Mrs. Starrels argues, however, that the "public exhibition for commercial purposes of one's family life is *ipso facto* an invasion of the personal right of privacy * * *." If this is a suggestion that Mrs. Starrels' family relationships with her father were depicted in the movie, there is nothing in the record to support it. If it is a suggestion that as a matter of law each member of a family has a legally protected right in the privacy of each of the other members of the family, the authority relied upon by Mrs. Starrels [Gill v. Curtis Publishing Co., 38 Cal.2d 273, 239 P.2d 630 (1952)] does not sustain it. See Kelly v. Johnson Publishing Co., 160 Cal.App.2d 718, 722, 325 P.2d 659, 662 (1958).

As the Tax Court said, it might be plausibly argued that advance consent precludes a subsequent invasion of personal rights from being tortious, and therefore that payment for such consent could never constitute "damages received * * * on account of personal injury * * *." But in any event it seems reasonably sure that the exemption in Section 104(a) (2) was not intended to reach advance payments for consent where no actual invasion of personal rights subsequently occurred. The language of Section 104(a) (2) reads most naturally in terms of payment for injuries sustained prior to a suit or settlement agreement. The "exemption is allowed for damages which have already occurred, and there is no suggestion of an exemption for amounts paid for possible future damages." Meyer v. United States, 173 F.Supp. 920, 924–925 (E.D. Tenn.1959). See also Ehrlich v. Higgins, 52 F.Supp. 805, 808–809 (S.D.N.Y.1943).

This reading is also consistent with the underlying purpose of the statute. Damages paid for personal injuries are excluded from gross income because they make the taxpayer whole from a previous loss of personal rights—because, in effect, they restore a loss to capital. See Commissioner of Internal Revenue v. Glenshaw Glass Co., 348 U.S. 426, 432 n. 8, 75 S.Ct. 473, 99 L.Ed. 483 (1955), and, in addition to the departmental rulings there cited, Rev.Rul. 55–132, 1955–1 Cum.Bull. 213; Rev.Rul. 56–462, 1956–2 Cum.Bull. 20; Rev.Rul. 56–518, 1956–2 Cum.Bull. 25; Rev.Rul. 57–505, 1957–2 Cum.Bull. 50; Rev.Rul. 58–370, 1958–2 Cum.Bull. 14; and Rev. Rul. 58–500, 1958–2 Cum.Bull. 21. See also H. Liebes & Co. v. Commissioner, 90 F.2d 932, 935 (9th Cir. 1937); Farmers' & Merchants' Bank of Catlettsburg v. Commissioner, 59 F.2d 912 (6th Cir. 1932).

This rationale will not support the exemption of receipts which do not compensate taxpayer for a loss but instead add to his wealth. As the Supreme Court said in Commissioner v. Glenshaw Glass Co., op. cit. supra, in holding that punitive damages for injury to property rights, as distinguished from actual damages, constituted taxable income, "the long history of departmental rulings holding personal injury recoveries nontaxable on the theory that they roughly correspond to a return of capital cannot support exemption of punitive damages following injury to property. (citing) Damages for personal injury are by

definition compensatory only. Punitive damages, on the other hand, cannot be considered a restoration of capital for taxation purposes." By a parity of reasoning, the exemption in favor of damages for personal injuries codified in Section 104(a)(2) cannot support the exemption of payments made for injuries which have never occurred because such payments are not compensatory and hence cannot be considered a restoration of capital.

We also agree with the Tax Court that the potential for abuse which would be presented if payments could be freed from taxation by casting them in the form of consideration for the release of possible future claims arising out of hypothetical injuries not yet sustained argues strongly against a finding that Congress intended Section 104(a)(2) to produce that result.

Finally, we reject Mrs. Starrels' suggestion that the payments were not gross income for tax purposes because they were not a gain from capital or labor to which a cost basis could be assigned for the purposes of computing profit. Since the payments involved "undeniable accessions to wealth, clearly realized, and over which the taxpayers have complete dominion," [Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 431, 75 S.Ct. 473, 476 (1955)], which were not "specifically exempted" from gross income (id. at 430, 75 S.Ct. at 476), the Tax Court properly held that they were includible in Mrs. Starrels' gross income. Cf. Miller v. Commissioner, 299 F.2d 706 (2d Cir. 1962); Runyon v. United States, 281 F.2d 590 (5th Cir. 1960), holding that payments under similar contracts were ordinary income and not gain from the sale of a capital asset within the meaning of 26 U.S.C.A. § 1221.

The judgment of the Tax Court is affirmed.