T.C. Memo. 1997-317

UNITED STATES TAX COURT

MICHAEL M. BRENNAN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10985-96.                    Filed July 9, 1997.

Michael M. Brennan, pro se.

<u>Elizabeth A. Owen</u>, for respondent.

MEMORANDUM OPINION

PARR, <u>Judge</u>:  This case is before us on respondent's motion
for summary judgment under Rule 121.[1]  Respondent determined a

---

[1]    All section references are to the Internal Revenue Code in
effect for the taxable year in issue, and all Rule references are
to the Tax Court Rules of Practice and Procedure, unless
otherwise indicated.  All dollar amounts are rounded to the
                                        (continued...)

deficiency in petitioner's Federal income tax in the amount of $15,316 for the taxable year 1992.

The issue for decision is whether petitioner may exclude from gross income under section 104(a)(2), amounts received from his employer upon termination of his employment on the ground that such amounts represented damages received on account of personal injury. At the time the petition in this case was filed, petitioner resided in Austin, Texas.

A motion for summary judgment is appropriate "if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law." Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994). The moving party bears the burden of proving that there is no genuine issue of material fact, and factual inferences are viewed in the light most favorable to the nonmoving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); Preece v. Commissioner, 95 T.C. 594, 597 (1990). The opposing party cannot rest upon mere allegations or denials, but must set forth specific facts showing there is a genuine issue for trial. Rule 121(d). The existence

---

[1](...continued)
nearest dollar, unless otherwise indicated.

of any reasonable doubt as to the facts will result in denial of the motion for summary judgment. Hoeme v. Commissioner, 63 T.C. 18, 20 (1974).

The facts presented below are stated solely for purposes of deciding respondent's motion for summary judgment.

Background

Petitioner was employed by International Business Machines Corporation (IBM) until his termination on April 20, 1992. Petitioner was employed to develop, manage, and present trade shows.

At some point prior to July 31, 1992, petitioner became eligible to participate in the IBM Modified and Extended Individual Transition Option Program (ITO II Program). The ITO II Program allows IBM employees to resign or retire early, receiving lump-sum payments and other benefits. Petitioner was required to sign a General Release and Covenant Not to Sue (the release) as a condition for receiving the lump-sum payment and benefits pursuant to the ITO-II program. The release is broadly written and covers any and all possible and potential claims in contract or in tort arising from employment or termination of employment. Pertinent sections of the release read as follows:

> In exchange for the sums and benefits which you
> will receive pursuant to the terms of the * * * [ITO-II

Program], M. M. Brennan[2] (hereinafter "you") agrees to release * * * [IBM] from all claims, demands, actions or liabilities you may have against IBM of whatever kind, including but not limited to those which are related to your employment with IBM or the termination of that employment. * * *  You also agree that this release covers, but is not limited to, claims arising from the Age Discrimination in Employment Act of 1967, as amended, Title VII of the Civil Rights Act of 1964, as amended, and any other federal or state law dealing with discrimination in employment on the basis of sex, race, national origin, religion, disability, or age.  You also agree that this release includes claims based on theories of contract or tort, whether based on common law or otherwise.  This release does not include your vested rights, if any, in the IBM Retirement Plan, which survive unaffected by this release.

> *     *     *     *     *     *     *

3.   This release does not waive any claims that you may have which arise after the date you sign this release.

> *     *     *     *     *     *     *

6.   In the event of rehire by IBM or any of its subsidiaries as a regular employee, you understand that IBM reserves the right to require repayment of a prorated portion of the ITO-II Program payment.  The amount of repayment will be based on the number of weeks off the IBM payroll compared with the number of weeks' salary used to calculate your payment.

On July 31, 1992, petitioner signed the release.  At the time of signing the release petitioner had no legal claims pending in either State or Federal court against IBM for unlawful

---

[2]   The name M. M. Brennan was typewritten in a blank space provided in the release.

employment practices.[3]  Petitioner, however, thought that he had a claim against IBM for infliction of emotional distress caused by his hectic employment travel schedule and pressure at work.[4]

In exchange for signing the release and participating in the ITO II Program, petitioner received a $52,169 lump-sum payment (the payment or ITO payment).  The payment was based on years of service and rate of pay.  At the time of signing the release, petitioner attached a statement to it indicating that he was submitting the release under duress.

For the year 1992 petitioner received a Form W-2 from IBM showing wages, tips, and other compensation as $90,946.51.  On October 13, 1993, petitioner filed his 1992 Federal income tax return.  Petitioner reported the $90,946.51 as wages, subtracted the $52,169 ITO payment therefrom, and attached a disclosure

---

[3]  Although petitioner did not file any legal claims against IBM prior to signing the release, he did file informal claims against IBM pursuant to the company's own internal Open Door program.

[4]  During the 179-day period from Oct. of 1991, through Mar. of 1992, petitioner was traveling or away from home on business for 119 days.  On Mar. 28, 1992, petitioner suffered a nervous breakdown at his hotel room in Cincinnati, Ohio, and had to enter an emergency room for treatment.  Upon petitioner's release, IBM requested that he return to Austin immediately.  From Apr. 2 through Apr. 4, 1992, at IBM's request, petitioner underwent a complete neurological checkup.  Upon returning to work in late April, petitioner felt that nothing had changed; he was still expected to travel at the same frenetic pace.  Following a difficult and pressured meeting with his supervisor, petitioner submitted a request for participation in the ITO II Program.  Petitioner, in fear of experiencing another nervous breakdown, signed the release on July 31, 1992.

statement to his return, asserting that the ITO payment is excludable from gross income pursuant to section 104(a)(2) as a payment received in exchange for the release and settlement of tort-type rights. Respondent determined that the ITO payment was fully taxable severance pay.

Discussion

Except as otherwise provided, gross income includes income from all sources. Sec. 61(a); Commissioner v. Glenshaw Glass Co., 348 U.S. 426 (1955). While section 61(a) is to be broadly construed, statutory exclusions from income are narrowly construed. Commissioner v. Schleier, 515 U.S. 323, 327-328 (1995); Kovacs v. Commissioner, 100 T.C. 124, 128 (1993), affd. without published opinion 25 F.3d 1048 (6th Cir. 1994).

Under section 104(a)(2), gross income does not include "the amount of any damages received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal injuries or sickness". Section 1.104-1(c), Income Tax Regs., provides:

> (c) Damages received on account of personal injuries or sickness. * * * The term "damages received (whether by suit or agreement)" means an amount received * * * through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution.

Thus, an amount may be excluded from gross income only when it was received both: (1) Through prosecution or settlement of an

action based upon tort or tort type rights; and (2) on account of personal injuries or sickness. Commissioner v. Schleier, supra; Wesson v. United States, 48 F.3d 894, 901-902 (5th Cir. 1995); Bagley v. Commissioner, 105 T.C. 396, 416 (1995).

Where damages are received pursuant to a settlement agreement, the nature of the claim that was the actual basis for settlement controls whether such damages are excludable under section 104(a)(2). United States v. Burke, 504 U.S. 229, 237 (1992); Thompson v. Commissioner, 866 F.2d 709, 711 (4th Cir. 1989), affg. 89 T.C. 632 (1987); Robinson v. Commissioner, 102 T.C. 116, 126 (1994), affd. in part, revd. in part 70 F.3d 34 (5th Cir. 1995). "[T]he critical question is, in lieu of what was the settlement amount paid?" Bagley v. Commissioner, supra at 406.

Determination of the nature of the claim is factual. Bagley v. Commissioner, supra; Stocks v. Commissioner, 98 T.C. 1, 11 (1992). The first requirement is the existence of a claim based upon tort or tort type rights. Commissioner v. Schleier, supra at 337. The claim must be bona fide, but not necessarily "valid; i.e.," sustainable. Taggi v. United States, 35 F.3d 93, 96 (2d Cir. 1994); Robinson v. Commissioner, 102 T.C. at 126; Stocks v. Commissioner, supra at 10. In this connection, we have held that claims for potential future personal injuries do not qualify for exclusion under section 104(a). Roosevelt v. Commissioner, 43

T.C. 77 (1964); Starrels v. Commissioner, 35 T.C. 646 (1961), affd. 304 F.2d 574 (9th Cir. 1962). Such holdings imply that there must be an existing claim. Moreover, while it need not have been previously asserted, the absence of any knowledge of the claim on the part of the employer-payor obviously has a negative impact in determining the requisite intent of the payment. Sodoma v. Commissioner, T.C. Memo. 1996-275; see also Keel v. Commissioner, T.C. Memo. 1997-278; Foster v. Commissioner, T.C. Memo. 1996-26.

Petitioner asserts that he had a bona fide claim against IBM for infliction of emotional distress caused by his travel schedule and pressures at work, and therefore IBM accepted petitioner's ITO II Program participation request and subsequent release in lieu of litigation. Petitioner claims that his position is supported by the fact that he filed informal claims and/or grievances against IBM pursuant to the company's own internal programs (e.g., Open Door Policy). Respondent argues that petitioner's failure to lodge any formal tort-type claim against IBM prior to and at the time of signing the release establishes that there was no bona fide dispute between petitioner and IBM that could provide the basis for settlement.

We disagree. An employee is not always required to file a formal legal action against an employer prior to settling an existing claim in order to exclude such settlement payment from

income under section 104(a)(2).  Sodoma v. Commissioner, supra.
Viewing the facts in the light most favorable to petitioner, it
can be argued that petitioner's filing of complaints with IBM's
grievance committee is at least some evidence of an existing
dispute between the parties that could have provided the basis
for settlement.  Thus, we find, for purposes of this motion only,
that petitioner has met the first prong of excludability under
section 104(a)(2) in that he has established the existence of an
underlying tort-type cause of action.  See Commissioner v.
Schleier, supra; also see  Taggi v. United States, supra at 96 (a
claim must be bona fide, but does not necessarily have to be
sustainable or valid).

We now turn to the language of the release itself.  The
release in this case is the same as that in Webb v. Commissioner,
T.C. Memo. 1996-50, and essentially the same as that in Sodoma v.
Commissioner, supra.  By its terms, petitioner released IBM from
liability for both contract and tort claims.  The release,
however, does not specifically indicate that the lump-sum payment
received by petitioner was paid to settle a potential personal
injury claim against IBM.  We note that where the settlement
agreement lacks express language stating what the settlement
amount was paid to settle, then the most important factor is the
intent of the payor.  Knuckles v. Commissioner, 349 F.2d 610, 612
(10th Cir. 1965), affg. T.C. Memo. 1964-33; Stocks v.

Commissioner, supra at 10.  Here, respondent argues, and we agree, that IBM did not make the payment on account of a personal injury.  The release form appears to be a standard document used by IBM for all of its employees who participate in the ITO II Program.  Moreover, the amount of the $52,169 lump-sum payment was calculated on the number of years of service and petitioner's salary.  Finally, the release states that if petitioner were rehired by IBM, he could be required to repay some portion of the lump-sum payment based on the number of weeks off the IBM payroll compared with the number of weeks' salary used to calculate the lump-sum payment.  As in Sodoma v. Commissioner, supra, and Webb v. Commissioner, supra, the lump-sum payment herein appears to have been severance pay rather than a payment for personal injury.  Severance pay, just like the pay it replaces, is taxable income.

Finally, we note that petitioner has not alleged or come forward with any evidence of the specific amounts of the payments allocable to claims of tort or tort-type damages for personal injuries.  Failure to do so results in the entire amount being presumed to be taxable.  See Taggi v. United States, supra; Getty v. Commissioner, 91 T.C. 160, 175-176 (1988), affd. as to this issue and revd. on other issues 913 F.2d 1486 (9th Cir. 1990). The release makes no allocation, and petitioner has not set forth any facts upon which he would rely to prove an allocation.

Indeed, the fact that the $52,169 was based on time of service and rate of pay points in the direction of its having been severance pay rather than a payment for personal injury.  See Webb v. Commissioner, supra, which involved the same payor and substantially the same plan as involved herein.

In sum, viewing the facts in a light most favorable to petitioner, we conclude that respondent has made a prima facie case to support a motion for summary judgment and that petitioner has failed to come forward with countervailing assertions having sufficient specificity to cause us to hold that there is any material issue of fact which requires a trial.  Accordingly, we hold that respondent's motion for summary judgment will be granted.

To reflect the foregoing,

An appropriate order and decision will be entered granting respondent's motion for summary judgment.