T.C. Memo. 1997-345


UNITED STATES TAX COURT



JOSEPH J. AND LILLIAN A. GAJDA, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 2210-97.                          Filed July 28, 1997.



Leonard L. Leighton, for petitioners.

Elizabeth A. Owen, for respondent.



MEMORANDUM OPINION


PARR, Judge:  This case is before us on respondent's motion

for summary judgment under Rule 121.[1]  Respondent determined a

_____

[1]    All section references are to the Internal Revenue Code in
effect for the taxable year in issue, and all Rule references are
to the Tax Court Rules of Practice and Procedure, unless
                                        (continued...)

deficiency in petitioners' Federal income tax of $33,343 for the taxable year 1993. The term "petitioner" refers to Joseph J. Gajda.

The issue for decision is whether petitioner may exclude from gross income under section 104(a)(2) amounts received from his employer upon termination of his employment on the ground that such amounts represented damages received on account of personal injury. At the time the petition in this case was filed, petitioners resided in Round Rock, Texas.

A motion for summary judgment is appropriate "if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law." Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994). The moving party bears the burden of proving that there is no genuine issue of material fact, and factual inferences are viewed in the light most favorable to the nonmoving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); Preece v. Commissioner, 95 T.C. 594, 597 (1990). The opposing party cannot rest upon mere allegations or denials, but must set forth specific facts showing

[1](...continued)
otherwise indicated. All dollar amounts are rounded to the nearest dollar, unless otherwise indicated.

there is a genuine issue for trial. Rule 121(d). The existence of any reasonable doubt as to the facts will result in denial of the motion for summary judgment. Hoeme v. Commissioner, 63 T.C. 18, 20 (1974).

The facts presented below are stated solely for purposes of deciding respondent's motion for summary judgment.

Background

Prior to and during a portion of 1993, petitioner was employed by International Business Machines Corp. (IBM). At the time petitioner ceased his employment with IBM, he was over 40 years old.

At some time during 1993, petitioner became eligible to participate in the IBM Modified and Extended Individual Transition Option Program (ITO II Program). The ITO II Program allows IBM employees to resign or retire early, receiving lump-sum payments and other benefits. Petitioner was required to sign a General Release and Covenant Not to Sue (the release) as a condition for the sums and benefits, including the lump-sum payment pursuant to the ITO II program.[2] The release is broadly

---

[2] Petitioners' counsel has failed to provide respondent with a copy of the release signed by petitioner. Respondent attached to his memorandum of authorities submitted to this Court a copy of the release used by IBM in the ITO II program. Petitioner did not contest the submission of the release in petitioner's response to respondent's motion for summary judgment. In fact, petitioner refers to the release as if it is the release petitioner signed. Thus we treat it as such.

written and covers any and all possible and potential claims in contract or in tort arising from employment or termination of employment. Pertinent sections of the release read as follows:

> In exchange for the sums and benefits which you will receive pursuant to the terms of the * * * [ITO II Program], (Name of Individual) (hereinafter "you") agrees to release * * * [IBM] from all claims, demands, actions or liabilities you may have against IBM of whatever kind, including but not limited to those which are related to your employment with IBM or the termination of that employment. * * * You also agree that this release covers, but is not limited to, claims arising from the Age Discrimination in Employment Act of 1967, as amended, Title VII of the Civil Rights Act of 1964, as amended, and any other federal or state law dealing with discrimination in employment on the basis of sex, race, national origin, religion, disability, or age. You also agree that this release includes claims based on theories of contract or tort, whether based on common law or otherwise. This release does not include your vested rights, if any, in the IBM Retirement Plan, which survive unaffected by this release.

>              *    *    *    *    *    *    *

> 6.    In the event of rehire by IBM or any of its subsidiaries as a regular employee, you understand that IBM reserves the right to require repayment of a prorated portion of the ITO II Program payment. The amount of repayment will be based on the number of weeks off the IBM payroll compared with the number of weeks' salary used to calculate your payment.

At some time during 1993, petitioner signed the release. At the time of signing the release petitioner had no legal claims for unlawful employment practices pending against IBM, nor had he lodged any informal complaints against the company. Petitioner, however, thought that he was forced by IBM to leave the company

and therefore had a claim against IBM for age discrimination and emotional distress.

In exchange for signing the release and participating in the ITO II Program, petitioner received a $91,690 lump-sum payment (the payment or ITO payment).  The payment was based on years of service and rate of pay.

For the year 1993 petitioner received a Form W-2 from IBM showing wages, tips, and other compensation as $228,290.[3]  On April 15, 1994, petitioners filed a 1993 joint Federal income tax return.  Petitioners reported the $228,290 as wages, subtracted the $91,690 ITO payment therefrom, and attached a disclosure statement to their return, asserting that the ITO payment is excludable from gross income pursuant to section 104(a)(2) as a payment received in exchange for the release and settlement of tortlike rights.  Respondent determined that the ITO payment was fully taxable severance pay.

Discussion

Except as otherwise provided, gross income includes income from all sources.  Sec. 61(a); Commissioner v. Glenshaw Glass Co., 348 U.S. 426 (1955).  While section 61(a) is to be broadly construed, statutory exclusions from income are narrowly construed.  Commissioner v. Schleier, 515 U.S. 323, 328 (1995);

---

[3]    On July 2, 1996, petitioners filed an amended return on which they excluded the $91,690 from gross income.

Kovacs v. Commissioner, 100 T.C. 124, 128 (1993), affd. without published opinion 25 F.3d 1048 (6th Cir. 1994).

Under section 104(a)(2), gross income does not include "the amount of any damages received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal injuries or sickness".  Section 1.104-1(c), Income Tax Regs., provides:

> (c) Damages received on account of personal injuries or sickness.--* * *  The term "damages received (whether by suit or agreement)" means an amount received * * * through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution.

Thus, an amount may be excluded from gross income only when it was received both:  (1) Through prosecution or settlement of an action based upon tort or tortlike rights; and (2) on account of personal injuries or sickness.  Commissioner v. Schleier, supra; Wesson v. United States, 48 F.3d 894, 901-902 (5th Cir. 1995); Bagley v. Commissioner, 105 T.C. 396, 416 (1995).

Where damages are received pursuant to a settlement agreement, the nature of the claim that was the actual basis for settlement controls whether such damages are excludable under section 104(a)(2).  United States v. Burke, 504 U.S. 229, 237 (1992); Thompson v. Commissioner, 866 F.2d 709, 711 (4th Cir. 1989), affg. 89 T.C. 632 (1987); Robinson v. Commissioner, 102 T.C. 116, 126 (1994), affd. in part and revd. in part 70 F.3d 34

(5th Cir. 1995). "[T]he critical question is, in lieu of what was the settlement amount paid?" Bagley v. Commissioner, supra at 406.

Determination of the nature of the claim is factual. Id.; Stocks v. Commissioner, 98 T.C. 1, 11 (1992). The first requirement is the existence of a claim based upon tort or tort type rights. Commissioner v. Schleier, supra at 331. The claim must be bona fide, but not necessarily valid; i.e., sustainable. Sodoma v. Commissioner, T.C. Memo. 1996-275 (citing Taggi v. United States, 35 F.3d 93, 96 (2d Cir. 1994)); Robinson v. Commissioner, supra at 126; Stocks v. Commissioner, supra at 10. In this connection, we note that we have held that claims for potential future personal injuries do not qualify for exclusion under section 104(a). Roosevelt v. Commissioner, 43 T.C. 77 (1964); Starrels v. Commissioner, 35 T.C. 646 (1961), affd. 304 F.2d 574 (9th Cir. 1962). Such holdings imply that there must be an existing claim.

Petitioner asserts that IBM was engaging in systematic discrimination against employees over the age of 40, that he was forced to leave the company because of his age, that as a result he has been diagnosed as having a "major depression" for which he is presently under psychiatric care, and that age discrimination was the primary concern of IBM in requiring petitioner to sign the release. Therefore, petitioner contends that IBM accepted

his ITO II Program participation request and subsequent release in lieu of litigation.

Respondent argues, pursuant to Commissioner v. Schleier, supra, that even if petitioner could establish an underlying cause of action for age discrimination, a payment made pursuant to the Age Discrimination in Employment Act of 1967 is not excludable from income under section 104(a)(2). Age Discrimination in Employment Act of 1967 (ADEA), Pub. L. 90-202, 81 Stat. 602 (current version at 29 U.S.C. secs. 621-634 (1994)).

Petitioner, however, has not limited his arguments to claims brought against IBM under the ADEA. Rather, petitioner asserts that he released IBM from liability for "potential tort claims", which would include both a claim for age discrimination under the ADEA and a common law cause of action for emotional distress. To support his position, petitioner relies on Commissioner v. Schleier, supra at 332 n.6, for the proposition that "intangible harms of discrimination can constitute personal injury, and that compensation for such harms may be excludable under §104(a)(2)."

Viewing the facts in the light most favorable to petitioner, it can be argued that petitioner had a potential tortlike claim for infliction of emotional distress. Thus, we assume, for purposes of this motion only, that petitioners have met the first prong of excludability under section 104(a)(2).

We now turn to the language of the release itself.  The release in this case is the same as that in <u>Brennan v. Commissioner</u>, T.C. Memo. 1997-317, and in <u>Webb v. Commissioner</u>, T.C. Memo. 1996-50, and essentially the same as that in <u>Sodoma v. Commissioner</u>, <u>supra</u>.  By its terms, petitioner released IBM from liability for both contract and tort claims.  The release, however, does not specifically indicate that the lump-sum payment received by petitioner was paid to settle a potential personal injury claim against IBM.  We note that where the settlement agreement lacks express language stating what the settlement amount was paid to settle, then the most important factor is the intent of the payor.  <u>Knuckles v. Commissioner</u>, 349 F.2d 610, 612 (10th Cir. 1965), affg. T.C. Memo. 1964-33; <u>Stocks v. Commissioner</u>, <u>supra</u> at 10.  Respondent argues that petitioner's failure to lodge any informal or legal tortlike claim against IBM prior to and at the time of signing the release establishes that there was no bona fide dispute between petitioner and IBM that could provide the basis for settlement.

To prevail under section 104(a)(2), petitioner is not required to have asserted a legal claim against IBM prior to signing the release; however, the absence of any knowledge of the claim on the part of the employer-payor obviously has a negative impact in determining the requisite intent of the payment. <u>Brennan v. Commissioner</u>, <u>supra</u>; <u>Sodoma v. Commissioner</u>, <u>supra</u>;

see also <u>Keel v. Commissioner</u>, T.C. Memo. 1997-278; <u>Foster v. Commissioner</u>, T.C. Memo. 1996-26. Respondent further argues that IBM did not make the payment on account of a personal injury. The release form is a standard document used by IBM for all of its employees who participate in the ITO II Program. Moreover, the amount of the $91,690 lump-sum payment was calculated on the number of years of service and petitioner's salary. Finally, the release states that if petitioner were rehired by IBM, he could be required to repay some portion of the lump-sum payment based on the number of weeks off the IBM payroll compared with the number of weeks' salary used to calculate the lump-sum payment. As in <u>Brennan v. Commissioner</u>, <u>supra</u>, <u>Sodoma v. Commissioner</u>, <u>supra</u>, and <u>Webb v. Commissioner</u>, <u>supra</u>, the lump-sum payment herein appears to have been severance pay rather than a payment for personal injury. Severance pay, just like the pay it replaces, is taxable income.

Finally, we note that petitioner has not alleged or come forward with any evidence of the specific amounts of the payments allocable to claims of tort or tortlike damages for personal injuries. The release makes no allocation, and petitioner has not set forth any facts upon which he would rely to prove an allocation. Indeed, the fact that the $91,690 was based on years of service and rate of pay points in the direction of its having been severance pay rather than a payment for personal injury.

See <u>Brennan v. Commissioner</u>, <u>supra</u>, which involved the same payor and the same plan as involved herein.

In sum, viewing the facts in a light most favorable to petitioner, we conclude that respondent has made a prima facie case to support a motion for summary judgment and that petitioner has failed to come forward with countervailing assertions having sufficient specificity to cause us to hold that there is any material issue of fact which requires a trial.  Accordingly, we hold that respondent's motion for summary judgment will be granted.

To reflect the foregoing,

<u>An appropriate order and decision</u>
<u>will be entered granting respondent's</u>
<u>motion for summary judgment</u>.