T.C. Memo. 1997-434


UNITED STATES TAX COURT


ALLEN L. AND DIANE A. CAREY, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 1670-96.                    Filed September 23, 1997.


Allen L. and Diane A. Carey, pro se.

<u>Howard P. Levine</u>, for respondent.


MEMORANDUM OPINION


TANNENWALD, <u>Judge</u>:  Respondent determined a deficiency in
petitioners' Federal income tax in the amount of $27,901 for the
taxable year 1993.

This case is before us on respondent's motion for summary judgment under Rule 121.[1]  The issue for decision is whether petitioners may exclude from gross income, under section 104(a)(2), amounts received from petitioner Allen L. Carey's employer, International Business Machines Corp. (IBM), upon termination of his employment, on the ground that such amounts represented damages received on account of personal injury.

The disposition of a motion for summary judgment under Rule 121 is controlled by the following principles:  (1) The moving party must show the absence of a dispute as to any material fact and that a decision may be rendered as a matter of law; (2) the factual materials and the inferences to be drawn from them must be viewed in the light most favorable to the party opposing the motion; and (3) the party opposing the motion cannot rest upon mere allegations or denials but must set forth specific facts showing there is a genuine issue for trial.  Rule 121; Brotman v. Commissioner, 105 T.C. 141, 142 (1995).

Petitioners resided in Tampa, Florida, at the time they filed their petition.

Petitioner Allen L. Carey (Mr. Carey) was employed by Skill Dynamics, part of IBM, until his termination in 1993.  He received a lump-sum payment of $85,702.54 from IBM in June of

---

[1]  Unless otherwise indicated, all statutory references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

1993 (the lump-sum payment) in connection with his termination. The lump-sum payment was termed "separation pay" by IBM, and the amount of the lump-sum payment was based on length of service and salary.

On June 30, 1993, Mr. Carey signed a General Release and Covenant Not to Sue (the release) as a condition for the sums and benefits, including the lump-sum payment, he received pursuant to the terms of the Skills Dynamics Transition Program (SDTP Program) offered by IBM. Pertinent sections of the release read as follows:

> In exchange for the sums and benefits which you will receive pursuant to the terms of the * * * [SDTP Program], ALLEN CAREY (hereinafter "you") agrees to release * * * [IBM] and its benefits plans from all claims, demands, actions, or liabilities you may have against IBM of whatever kind, including but not limited to those which are related to your employment with IBM, the termination of that employment or other severance payments or your eligibility or participation in the Retirement Bridge Leave of Absence. * * * You also agree that this release covers, but is not limited to, claims arising from the Age Discrimination in Employment Act of 1967, as amended, Title VII of the Civil Rights Act of 1964, as amended, and any other federal, state or local law dealing with discrimination in employment, including but not limited to discrimination based on sex, race, national origin, religion, disability, veteran status or age. You also agree that this release includes claims based on theories of contract or tort, whether based on common law or otherwise.
>
> This agreement covers both claims that you know about and those that you may not know about which have accrued by the time you execute this release. This release does not include your nonforfeitable rights to your accrued benefits * * * , as of the date of your retirement from IBM under the IBM Retirement Plan and the IBM Tax Deferred Savings Plan, which are not

released hereby but survive unaffected by this document.

* * * * * * *

3. This release does not waive any claims that you may have which arise after the date you sign this release.

* * * * * * *

5. In the event of rehire by IBM or any of its subsidiaries as a regular employee, you understand that IBM reserves the right to require repayment of a prorated portion of the SDTP. The amount of repayment will be calculated as one week of pay at the rate used to calculate the SDTP, multiplied by the difference between the number of weeks used to calculate the SDTP and the number of weeks away from IBM, less associated payroll taxes withheld by IBM.

Mr. Carey was 55 years of age in June 1993. For many years, Mr. Carey had, and in 1993 continued to have, a hearing impairment for which he wore a hearing aid and was, and in 1993 continued to be, subject to seizures which he controlled through medication. IBM was aware of Mr. Carey's health conditions for more than 20 years prior to his termination. At the time of signing the release, Mr. Carey had not filed any claims against IBM in respect of those conditions or otherwise.

Petitioners filed their 1993 Federal income tax return and did not include the lump-sum payment in their taxable income. They attached Form 8275 (Disclosure Statement) to their return, describing the lump-sum payment and claiming it was excludable pursuant to section 104(a)(2). Petitioners also attached a copy of the release to their return.

Except as otherwise provided, gross income includes income from all sources. Sec. 61(a); Commissioner v. Glenshaw Glass Co., 348 U.S. 426 (1955). While section 61(a) is to be broadly construed, statutory exclusions from income are narrowly construed. Commissioner v. Schleier, 515 U.S. 323, 328 (1995); Kovacs v. Commissioner, 100 T.C. 124, 128 (1993), affd. without published opinion 25 F.3d 1048 (6th Cir. 1994).

Under section 104(a)(2), gross income does not include "the amount of any damages received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal injuries or sickness". Section 1.104-1(c), Income Tax Regs., provides:

> (c) Damages received on account of personal injuries or sickness. * * * The term "damages received (whether by suit or agreement)" means an amount received * * * through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution.

Thus, an amount may be excluded from gross income only when it was received both: (1) Through prosecution or settlement of an action based upon tort or tort type rights; and (2) on account of personal injuries or sickness. Commissioner v. Schleier, supra at 333-334; Wesson v. United States, 48 F.3d 894, 901-902 (5th Cir. 1995); Bagley v. Commissioner, 105 T.C. 396, 416 (1995), affd. ___ F.3d ___ (8th Cir., Aug. 6, 1997).

Where damages are received pursuant to a settlement agreement, the nature of the claim that was the actual basis for

settlement controls whether such damages are excludable under section 104(a)(2). United States v. Burke, 504 U.S. 229, 237 (1992); Thompson v. Commissioner, 866 F.2d 709, 711 (4th Cir. 1989), affg. 89 T.C. 632 (1987); Robinson v. Commissioner, 102 T.C. 116, 126 (1994), affd. in part and revd. in part 70 F.3d 34 (5th Cir. 1995). "[T]he critical question is, in lieu of what was the settlement amount paid?" Bagley v. Commissioner, supra at 406.

Determination of the nature of the claim is factual. Bagley v. Commissioner, supra; Stocks v. Commissioner, 98 T.C. 1, 11 (1992). If the settlement agreement lacks express language stating what the settlement amount was paid to settle, then the most important factor is the intent of the payor. Knuckles v. Commissioner, 349 F.2d 610, 612 (10th Cir. 1965), affg. T.C. Memo. 1964-33; Stocks v. Commissioner, supra at 10.

The first requirement is the existence of a claim "based upon tort or tort type rights". Commissioner v. Schleier, supra at 333. The claim must be bona fide, but not necessarily valid, i.e., sustainable. Taggi v. United States, 35 F.3d 93, 96 (2d Cir. 1994); Robinson v. Commissioner, 102 T.C. at 126; Stocks v. Commissioner, supra at 10. Moreover, while it need not have been previously asserted, the absence of any knowledge of the claim on the part of the employer-payor obviously has a negative impact in determining the requisite intent of the payment.

As we see it, there are three types of injuries to which the IBM payments to Mr. Carey might be sourced. First, IBM may have been motivated to set up the retirement program as a method of ridding itself of "over-age" employees. However, this source does not permit exclusion pursuant to section 104(a) under the Age Discrimination in Employment Act of 1967, Pub. L. 90-202, 81 Stat. 602 (current version at 29 U.S.C. secs. 621-634 (1994)). Commissioner v. Schleier, supra.

The second motive for payment might have been future claims for personal injuries, but this source is also precluded from the exclusion provided by section 104, Roosevelt v. Commissioner, 43 T.C. 77 (1964); Starrels v. Commissioner, 35 T.C. 646 (1961), affd. 304 F.2d 574 (9th Cir. 1962), as well as the provision of the release preserving Mr. Carey's right to pursue claims arising subsequent to the date of the release, see supra p. 4. Nor does the possibility of emotional distress arising out of pressure on Mr. Carey to sign the release provide a basis for applying the section 104(a) exclusion herein in the absence of any specific, meaningful allegations by petitioners in this regard. Sodoma v. Commissioner, T.C. Memo. 1996-275.

A third source for the IBM payment might have been Mr. Carey's prior medical problems and the possible application of the Americans with Disabilities Act of 1990 (ADA), Pub. L. 101-336, sec. 2, 104 Stat. 328 (current version at 42 U.S.C. sec. 12101 (1994)); Civil Rights Act of 1991, Pub. L. 102-166, sec.

102, 105 Stat. 1072 (current version at 42 U.S.C. sec. 1981a (1994)). See Phillips v. Commissioner, T.C. Memo. 1997-336, in which we elaborated on these provisions including the possible application to emotional distress arising from termination of employment. We think the record herein is far from adequate to provide a sufficient basis for denying respondent's motion, but we need not rest our decision on this ground because, irrespective of any definitive conclusion on this score, respondent would still be entitled to have the motion granted. Gajda v. Commissioner, T.C. Memo. 1997-345; Phillips v. Commissioner, supra.

Petitioners have the burden of proving the amounts of the payments allocable to claims of tort or tort type damages for personal injuries. Failure to meet this burden results in the entire amount's being presumed not to be excludable. See Taggi v. United States, supra; Getty v. Commissioner, 91 T.C. 160, 175-176 (1988), affd. as to this issue and revd. on other issues 913 F.2d 1486 (9th Cir. 1990).

Mr. Carey did not file a claim with IBM prior to the signing of the release. The release in this case is essentially the same as that in the many other cases involving IBM separation pay which have come before this Court. Gajda v. Commissioner, supra; Lubart v. Commissioner, T.C. Memo. 1997-343; Thorpe v. Commissioner, T.C. Memo. 1997-342; Phillips v. Commissioner, supra; Morabito v. Commissioner, T.C. Memo. 1997-315; Sodoma v.

Commissioner, supra.[2]  By its terms, Mr. Carey released IBM from liability for both contract and tort claims, except those claims arising after the date of signature.  The release makes no allocation of the lump-sum payment.  The record herein reflects no basis for any such allocation.

Finally, as in the other IBM payment cases, the amount of Mr. Carey's lump-sum payment was calculated on length of service and salary.  The release states that if Mr. Carey were rehired by IBM, he could be required to repay some portion of the lump-sum payment based on the number of weeks off the IBM payroll compared with the number of weeks' salary used to calculate the lump-sum payment.  As in Keel v. Commissioner, T.C. Memo. 1997-278, Sodoma v. Commissioner, supra, and Webb v. Commissioner, T.C. Memo. 1996-50, the lump-sum payment herein appears to have been severance pay rather than a payment for personal injury.  Severance pay, just like the pay it replaces, is taxable income.

We hold that the lump-sum payment is not excludable from gross income under section 104(a)(2).  Accordingly,

Respondent's motion for summary judgment will be granted and decision will be entered for respondent.

---

[2]  See also Adams v. Commissioner, T.C. Memo. 1997-357; Keel v. Commissioner, T.C. Memo. 1997-278.