T.C. Memo. 1996-26

UNITED STATES TAX COURT

ALEX MORGAN FOSTER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 489-94.                    Filed January 24, 1996.

Alex Morgan Foster, pro se.

<u>Lloyd T. Silberzweig</u> and <u>Debra K. Moe</u>, for respondent.


MEMORANDUM OPINION

DEAN, <u>Special Trial Judge</u>:  This case was assigned pursuant to the provisions of section 7443A(b)(3) and Rules 180, 181, and 182.[1]

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year at issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a deficiency of $7,197 in petitioner's 1989 Federal income tax and an accuracy-related penalty under section 6662(a) in the amount of $1,439.40.

After concessions,[2] the issues for decision are: (1) Whether the proceeds of a settlement entered into between petitioner and his former employer are excludable from income under section 104(a)(2); (2) whether petitioner is liable for self-employment tax under section 1401 with respect to such proceeds; and (3) whether petitioner is liable for an accuracy-related penalty for negligence or disregard of rules or regulations pursuant to section 6662(a).

Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioner resided in Danville, California, at the time he filed his petition.

Background

From October 18, 1988, through February 27, 1989, petitioner worked as an attorney for the legal department of American Building Maintenance Industries, Inc. (hereinafter ABMI).

During the period of his employment, petitioner worked under the supervision of the General Counsel to ABMI, Harry Kahn

---

[2]The parties have stipulated that, during the taxable year at issue, petitioner: (1) Received dividend income in the amount of $219.97, received interest income in the amount of $466.27, and received additional capital gains in the amount of $282.03; and (2) incurred ordinary and necessary business expenses in the amount of $2,902.

(hereinafter Kahn).  Petitioner's responsibilities consisted primarily of reviewing various service contracts.

Within a short time of his hiring, a strained relationship developed between petitioner and Kahn.  As demonstrated by the record, the two:  (1) Differed as to the need for a "computerized management information system";  (2) disagreed as to the proper means of settling a particular lease dispute; and (3) discussed a clash of personalities between petitioner and Kahn's secretary.

On January 17, 1989, Kahn apprised petitioner that his performance at ABMI was "unsatisfactory".  Shortly thereafter, on February 24, 1989, Kahn fired petitioner.

On March 1, 1989, petitioner sent two personal and confidential letters to David Anacker (hereinafter Anacker), the president and chief executive officer of ABMI.  Petitioner opined in both letters that Kahn's termination of his employment had been wrongful under the law.  In support, petitioner recounted the incidents listed previously, and, in pertinent part, wrote that:

> General Counsel's action of termination came as a surprise in view of my short tenure, the huge backlog which was worked off and the problems which were necessary to overcome to accomplish a smooth functioning of the Legal Department.  In my opinion I should have been given professional guidance if my work was not satisfactory.  Time for me to make corrections and implementation of criticisms by General Counsel should have been allowed before precipitous action such as termination.
>
> I fear that irreparable harm has been done to my near term job hunting success.  It will be difficult at best to explain to prospective new employers such a short tenure at ABMI.  Given that I have already

started to accrue damages such as lost wages I suggest you consider the following offer of settlement.  This is not to be construed as an admission of liability but merely as an offer of settlement.

* * *

A lump sum payment to me amounting to 8 months salary and benefits, ignoring deductions which would normally be made under payroll conditions, should be paid to me forthwith.  In my opinion a court or jury would find at least one years salary would be in order as damages if it is found that General Counsel breached an employment agreement to employ me.

Shortly after his receipt of the March 1, 1989, letters, Anacker instructed Kahn to prepare a memorandum detailing the events surrounding petitioner's termination.   A copy of this memorandum was introduced at trial.  Bearing the date March 2, 1989, the memorandum essentially sets forth Kahn's belief that petitioner had produced substandard work while at ABMI.  Kahn states therein that petitioner was given several opportunities to improve his performance, but failed to do so.

At some point, soon after Kahn prepared his memorandum, Anacker met with petitioner.  During this meeting, the two apparently reached an understanding regarding petitioner's grievances.  Thereafter, Anacker had a proposed settlement agreement executed on behalf of ABMI and sent to petitioner.  In relevant part, the proposed agreement provided petitioner a lump-sum payment in the amount of $20,000 to satisfy any and all claims, known or unknown, against ABMI.

Subsequent to his receipt of the proposed settlement agreement, petitioner sent two additional personal and

confidential letters to Anacker on March 21, 1991.  In one of these letters, petitioner stated that:

> We discussed that this settlement would be in payment of my tort claim thereby making the settlement non-taxable.  This is very important to me.  In my opinion such a settlement can be made and therefore I must insist on such terms.

In the second letter, petitioner wrote:

> I have also revised the lump sum settlement amount pursuant to our conversations to account for deductions made from my last check.  Moreover, I have shortened the period that ABMI would pay for my medical/dental benefits.  In effect, the gross number is $21,000, less than a hundred dollar rounding bias in my favor. Clearly too, a round number would be a great asset in beating an IRS audit should I be challenged.

On April 18, 1989, petitioner and Anacker signed a final settlement agreement (hereinafter the agreement).  In pertinent part, the agreement provides that:

A.  <u>CONDITIONS OF AGREEMENT</u>

1.  This AGREEMENT is based on the fact that FOSTER may otherwise institute or continue actions or participate in actions against ABMI arising from FOSTER'S employment or the severance thereof and/or conduct affecting in any way their relationships to date.  FOSTER and ABMI desire to completely resolve and settle any and all such disputed claims FOSTER may have against ABMI.

2.  The terms of this AGREEMENT set forth the full obligations of the parties.  The parties have no further obligations aside from those expressed in this AGREEMENT.

3.  It is agreed and understood by the parties that neither the fact that settlement has occurred nor the fact that ABMI provides consideration for the release of claims can be construed as an admission of

any liability or wrongdoing on the part of ABMI.  Both parties expressly deny any liability to the other party.  The parties enter into this AGREEMENT in order to resolve disputed claims and to avoid unnecessary litigation.  No admission of liability of either party can be applied [sic] from FOSTER'S separation or the fact or terms of Settlement.  Consideration payable under the terms of this AGREEMENT shall be deemed by the parties as settlement of said disputed claim between the parties.

B.  TERMS OF SETTLEMENT

1.  ABMI shall pay to FOSTER the sum of TWENTY THOUSAND DOLLARS ($20,000.00) payable as set forth below.

2.  Settlement payment shall be paid to FOSTER personally in four installments on April 14, 1989 (receipt of which is hereby acknowledged) by 12:00 p.m. and on the 15th day of the ensuing three months, May, June and July.  ABMI may file an IRS form 1099 if required by law for the 4 installments required by this paragraph B.2.

* * *

6.  The parties agree that upon execution by the parties to this AGREEMENT, FOSTER shall be an independent contractor and may represent himself as "Of Counsel" to ABMI.  Permissive use of this title does not signify that FOSTER is actually employed by ABMI. "Of Counsel" status shall terminate at the earliest of FOSTER'S permanent employment or July 31, 1989. * * *

* * *

9.  FOSTER agrees to and hereby does voluntarily release and forever discharge ABMI from any and all claims, demands, damages and actions and causes of every kind, known, or unknown, arising out of or any way connected with FOSTER'S employment * * *.  FOSTER agrees that he will not continue, institute or participate in any legal proceedings of any kind whatsoever in any forum, agency, court or tribunal against ABMI * * * occurring prior to the execution by the parties of this AGREEMENT.

10.  "Claims" as used herein shall include all actions, claims, and or grievances, whether actual or potential, known or unknown and specifically but not exclusively, all claims which FOSTER may have arising

out of his employment or severance thereof.  All such
claims are forever barred by this AGREEMENT regardless
of the forum in which such claim(s) might be brought.
* * *

The parties expressly acknowledge that this
AGREEMENT is intended to include all claims which
FOSTER does not know or expect to exist in his
favor at the time of execution of this AGREEMENT
which claims are hereby extinguished. * * *

Pursuant to the terms of the agreement, petitioner received payments from ABMI totaling $20,000 during the taxable year 1989. On or about January 15, 1990, ABMI issued to petitioner an Internal Revenue Service (IRS) Form 1099-MISC, which reported nonemployee compensation paid to him in the amount of $20,000 for 1989.

Petitioner reported the $20,000 settlement received as "Gross receipts or sales" on Schedule C of his 1989 Federal income tax return.  He claimed as an offset against this amount a deduction for "PERSONAL INJURY SETTLEM [sic]" in the amount of $15,000.  This deduction was claimed to reflect the judgment of petitioner's accountant that $5,000 of the settlement was attributable to lost wages, and that $15,000 was attributable to tort like claims excludable under section 104(a)(2).  Petitioner now claims, however, that his method of reporting the settlement was erroneous, and that the entire amount received should have been excluded from income under section 104(a)(2).

Exclusion of Settlement Proceeds

Respondent determined in the notice of deficiency that no part of the $20,000 settlement was excludable from petitioner's

income.  According to respondent, petitioner has not established that this amount was received as damages on "account of personal injuries", as defined under section 104(a)(2).  Petitioner disagrees, arguing that the settlement was meant to address a plethora of tort claims against ABMI, including "wrongful termination of employment under California law * *  * retaliatory discharge, First Amendment claims, malicious prosecution, defamation, disparagement, trade libel, emotional distress, and national origin discrimination."

Although section 61(a) defines gross income to include "all income from whatever source derived," an exception may be found under section 104(a)(2) and the regulations thereunder.  Section 104(a)(2) provides that "the amount of any damages received (whether by suit or agreement * * *) on account of personal injuries or sickness" is excludable from gross income.  Section 1.104-1(c), Income Tax Regs., provides that:

> The term "damages received (whether by suit or agreement)" means an amount received (other than workmen's compensation) through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution.

In determining whether a settlement payment was intended to compensate for personal injuries, we are not concerned with the validity of the claims settled by the settlement or legal suit. Seay v. Commissioner, 58 T.C. 32, 37 (1972).  Rather, we focus on the nature of the matter settled.  Id.  For purposes of section 104(a)(2), we look to State law (here, California law) to decide

the "nature" of a claim. See <u>United States v. Mitchell</u>, 403 U.S. 190, 197 (1971).

In a case such as this where the settlement lacks express language stating that the payment was made on account of personal injuries, the intent of the payor in making the payment is the most important factor to be discerned. <u>Knuckles v. Commissioner</u>, 349 F.2d 610 (10th Cir. 1965), affg. T.C. Memo. 1964-33. This is a factual determination, and is made based upon an examination of all the evidence. <u>Seay v. Commissioner</u>, <u>supra</u> at 37.

Petitioner argues that a host of tort claims were settled by his agreement with ABMI. Petitioner has not demonstrated, however, that Anacker, as representative of ABMI, the payor, was aware of such claims at the time the agreement was negotiated. See <u>Galligan v. Commissioner</u>, T.C. Memo. 1993-605. Based on the record, the most that can be said is that petitioner apprised Anacker of a potential action for breach of the covenant of good faith and fair dealing implied in a claimed employment contract with ABMI. Even if we accept, arguendo, that petitioner's employment was not at-will,[3] and that there was a breach of an implied covenant, the relief for such a breach is limited under California law to traditional contractual remedies.[4] See <u>Mundy</u>

---

[3]California Labor Code sec. 2922 (West 1989) provides in relevant part, "An employment, having no specified term, may be terminated at the will of either party on notice to the other".

[4]We note that, even in the case of at-will employment, tort remedies are available to an employee if he or she is terminated in contravention of "public policy". E.g., <u>Tameny v. Atlantic Richfield Co.</u>, 610 P.2d 1330, 1331 (Cal. 1980) (Employer's
(continued...)

v. Household Finance Corp., 885 F.2d 542, 544 (9th Cir. 1989), citing Foley v. Interactive Data Corp., 765 P.2d 373 (1988). Section 104(a)(2) excludes only damages received on account of the prosecution or settlement of tort or tort type claims, not the prosecution or settlement of economic rights arising out of a contract. Commissioner v. Schleier, 515 U.S. ____, 115 S. Ct. 2159.

To the extent petitioner argues that the broad definition of a "claim" in the agreement with ABMI covers potential claims for personal injuries, thereby qualifying the settlement for exclusion under section 104(a)(2), we are not persuaded. The existence of an agreement that contains a release of undisclosed or potential claims is not sufficient evidence, in and of itself, that the amounts paid under that agreement are eligible for section 104(a)(2) exclusion. Galligan v. Commissioner, supra.

Furthermore, even if we were to set aside the question of the payor's intent, we find that, based on the record, petitioner's claims of tortious injury from his firing were motivated in this matter "not by actionable injury to petitioner, but rather by the tax advantage resulting to him for settlement on that ground." Knuckles v. Commissioner, T.C. Memo. 1964-33, affd. 349 F.2d 610 (10th Cir. 1965).

---

(...continued)
authority over its employee does not include the right to demand that the employee commit a criminal act to further its interests). Petitioner has failed to demonstrate, however, that it was ever the "intent of the payor" to settle such a claim.

Based on the foregoing, we find that the proceeds of petitioner's settlement with ABMI are not excludable under section 104(a)(2).  Accordingly, respondent is sustained on this issue.

Self-Employment Tax

Respondent determined in the notice of deficiency that, due to adjustment to petitioner's Schedule C income, petitioner was liable for self-employment tax under section 1401 in the amount of $2,902.  In opposition, petitioner argues that the settlement was excludable under section 104(a)(2), and, therefore, improperly reported by ABMI as nonemployee income on IRS Form 1099.  We find, however, that petitioner's arguments on this point are moot, as we have already held for respondent on the question of whether the settlement was excludable from petitioner's income.  Accordingly, respondent is sustained on this issue as well.[5]

Section 6662(a) Penalty

Respondent determined an accuracy-related penalty under section 6662(a) with respect to petitioner's 1989 Federal income tax return for negligence or disregard of rules or regulations.

In pertinent part, section 6662 imposes an accuracy-related penalty equal to 20 percent of the portion of an underpayment of tax that is attributable to negligence or disregard of rules or

---

[5]In computing petitioner's self-employment income in the Rule 155 computation, allowance will be made for respondent's concession that petitioner is entitled to Schedule C deductions for 1989 in the amount of $2,902.

regulations. Sec. 6662(a), (c). Section 6662(c) defines "negligence" as including any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code, and defines "disregard" as including any careless, reckless, or intentional disregard.

Petitioner has conceded that he failed to report the receipt of interest, dividends, and capital gains during the taxable year 1989. Petitioner seeks to avoid imposition of a penalty under section 6662(a) for this omission by arguing that it was attributable to the late receipt of a Form 1099 from Merrill Lynch. We find this explanation to be self-serving and lacking credibility. Furthermore, petitioner failed to offer any evidence as to why an amended return was not filed to report this income once the Form 1099 was received.

Based on the record, we also find that petitioner was negligent in reporting his receipt of the settlement from ABMI.

Accordingly, respondent's determination of an accuracy-related penalty is sustained.

Decision will be entered
under Rule 155.