T.C. Memo. 1996-275


UNITED STATES TAX COURT


ROBERT C. SODOMA AND GWEN A. SODOMA, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 19881-94.          Filed June 13, 1996.


<u>Leonard Lanny Leighton</u>, for petitioners.[1]

<u>Joni D. Larson</u>, for respondent.


MEMORANDUM OPINION

TANNENWALD, <u>Judge</u>:  Respondent determined a deficiency of $21,104 in petitioners' 1993 Federal income tax.

---

[1]  Brief amicus curiae was filed by <u>Neil D. Kimmelfield</u>, on behalf of Ball, Janik & Novack, who are counsel for other similarly situated taxpayers.

This case is before us on respondent's motion for summary judgment under Rule 121.[2]  The issue for consideration is whether petitioners may exclude from gross income, under section 104(a)(2), amounts received from Robert C. Sodoma's employer in consideration for signing a general release and covenant not to sue agreement.

The disposition of a motion for summary judgment under Rule 121 is controlled by the following principles:  (1) The moving party must show the absence of dispute as to any material fact and that a decision may be rendered as a matter of law; (2) the factual materials and the inferences to be drawn from them must be viewed in the light most favorable to the party opposing the motion; (3) the party opposing the motion cannot rest upon mere allegations or denials, but must set forth specific facts showing there is a genuine issue for trial.  Rule 121; Brotman v. Commissioner, 105 T.C. 141 (1995).

Respondent's motion is based on a stipulation of facts and attached exhibits which are incorporated herein by this reference.

At the time the petition was filed, petitioners resided in Austin, Texas.

Prior to and during a portion of 1993, Mr. Sodoma was employed by the International Business Machines Corporation

---

[2]  Unless otherwise indicated, all statutory references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

(IBM). At some time in 1993, he became eligible to participate in IBM's Austin Transition Program (retirement program). In exchange for the sums and benefits to be received pursuant to the retirement program, he was required to sign a general release and covenant not to sue agreement.

The release agreement provides in part:

> In exchange for the sums and benefits which you will receive pursuant to the terms of the Austin Transition Program (Name of Individual) (hereinafter "you") agrees to release International Business Machines Corporation (hereinafter "IBM") and its benefits plans from all claims, demands, actions or liabilities you may have against IBM of whatever kind, including but not limited to those which are related to your employment with IBM, the termination of that employment or other severance payments or your eligibility or participation in the Retirement Bridge Leave of Absence. * * *

> * * * You also agree that this release covers, but is not limited to, claims arising from the Age Discrimination in Employment Act of 1967, as amended, Title VII of the Civil Rights Act of 1964, as amended, and any other federal, state or local law dealing with discrimination in employment, including but not limited to discrimination based on sex, race, national origin, religion, disability, veteran status or age. You also agree that this release includes claims based on theories of contract or tort, whether based on common law or otherwise. This agreement covers both claims that you know about and those that you may not know about which have accrued by the time you execute this release. * * *

>            *     *     *     *     *     *     *

You acknowledge and agree that:

1. The payment and benefits provided pursuant to the ATP constitute consideration for this release, in that they are payments and benefits to which you would not have been entitled had you not signed this release.

* * * * * * *

3. This release does not waive any claims that you may have which arise after the date you sign this release.

Mr. Sodoma signed the release on September 28, 1993.

In addition to the release, the parties have stipulated that Mr. Sodoma did not have any preexisting claim of age discrimination, or other unlawful discrimination, against IBM, either formal or informal, written or oral, pending or inchoate, at the time the release was signed.

Pursuant to the retirement program, and as consideration for the release, Mr. Sodoma received $69,636 from IBM, calculated on the basis of time of service and rate of pay. IBM reported that amount on Mr. Sodoma's W-2 wage statement.

Except as otherwise provided, gross income includes income from all sources. Sec. 61(a); Commissioner v. Glenshaw Glass Co., 348 U.S. 426 (1955). While section 61(a) is to be broadly construed, statutory exclusions from income must be narrowly construed. Commissioner v. Schleier, 515 U.S. ___, 115 S. Ct. 2159, 2163 (1995); Kovacs v. Commissioner, 100 T.C. 124, 128 (1993), affd. without published opinion 25 F.3d 1048 (6th Cir. 1994).

Under section 104(a)(2), gross income does not include:

the amount of any damages received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal injuries or sickness.

Section 1.104-1(c), Income Tax Regs, provides:

(c) Damages received on account of personal injuries or sickness. * * * The term "damages received (whether by suit or agreement)" means an amount received * * * through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution.

Thus, an amount may be excluded from gross income only when it was received both: (1) through prosecution or settlement of an action based upon tort or tort type rights; and (2) on account of personal injuries or sickness. <u>Commissioner v. Schleier</u>, 515 U.S. at ___, 115 S. Ct. at 2166-2167; <u>Wesson v. United States</u>, 48 F.3d 894, 901-902 (5th Cir. 1995); <u>Bagley v. Commissioner</u>, 105 T.C. 396, 416 (1995).

Where damages are received pursuant to a settlement agreement, as is the case herein,[3] the nature of the claim that was the actual basis for settlement controls whether such damages

---

[3] In response to a concern of petitioners, we note that we consider the release agreement to be a settlement or settlement agreement. See, e.g., Black's Law Dictionary at 1372 (6th ed. 1990) (defining "settle" as "A word of equivocal meaning; meaning different things in different connections, and the particular sense in which it is used may be explained by the context or the circumstances"). In any event, whatever the semantical description of the release, the focus is on the actual terms of the document.

are excludable under section 104(a)(2).  United States v. Burke, 504 U.S. 229, 237 (1992); Robinson v. Commissioner, 102 T.C. 116, 126 (1994), affd. in part, revd. in part 70 F.3d 34 (5th Cir. 1995).  "[T]he critical question is, in lieu of what was the settlement amount paid?"  Bagley v. Commissioner, supra at 406.

Determination of the nature of the claim is factual.  Bagley v. Commissioner, supra; Stocks v. Commissioner, 98 T.C. 1, 11 (1992).  The most important element is the intent of the payor. Robinson v. Commissioner, supra at 127.

Essential to petitioner's ability to satisfy the first requirement is the existence of a claim "based upon tort or tort type rights".  See supra p. 5.  The parties and the amicus curiae have advanced extensive arguments as to whether such a claim must have been a valid claim that was asserted prior to the settlement.  We are satisfied that the only requirement is that there be a claim which is bona fide, not necessarily valid, i.e., sustainable.  Taggi v. United States, 35 F.3d 93, 96 (2d Cir. 1994); Robinson v. Commissioner, supra at 126; Stocks v. Commissioner, supra at 10.  In this connection, we note that we have held that claims for potential future personal injuries do not qualify for exclusion under section 104(a).  Roosevelt v. Commissioner, 43 T.C 77 (1964); Starrels v. Commissioner, 35 T.C. 646 (1961), affd. 304 F.2d 574 (9th Cir. 1962). Such holdings imply that there must be an existing claim.  Moreover, while it

need not have been previously asserted, the absence of any knowledge of the claim on the part of the employer-payor obviously has a negative impact in determining the requisite intent of the payment.[4] Any problems in respect of these factors are resolved in this case by the stipulation of the parties that there was no preexisting claim based on age or other unlawful discrimination. See supra p. 4.

Viewing the facts in the light most favorable to petitioner, see Kroh v. Commissioner, 98 T.C. 383, 390 (1992), it can be argued that the stipulation as to the absence of a "pre-existing claim" together with the preservation of future claims by the release, see supra p. 4, leaves open the possibility of a claim of discrimination based on the settlement itself. Such a possibility has been adverted to in Webb v. Commissioner, T.C. Memo. 1996-50, and Galligan v. Commissioner, T.C. Memo. 1993-605, although neither of these cases accepted such an argument as a ground for decision. Whatever may be the merits of an assertion of such a window of opportunity, we see no basis for giving it any consideration herein. Petitioners do no more than infer such an approach; they do not set forth any supporting allegations of fact in support thereof beyond their general assertions to which we now turn our attention.

---

[4] See Foster v. Commissioner, T.C. Memo. 1996-26.

Petitioners' basis for asserting that there are substantial issues of fact that require denial of respondent's motion is that they would offer the following evidence:

(1)  Mr. Sodoma was over 40 years of age at the time he executed the release.

(2)  The only consideration for the payment received from IBM was the execution of the release.

(3)  IBM did not treat the payment as compensation for retirement plan purposes.

(4)  IBM was engaged in a systematic violation of the Age Discrimination in Employment Act of 1967, Pub. L. 90-202, 81 Stat. 602 (current version at 29 U.S.C. secs. 621-634 (1988)) (ADEA), and age discrimination was its primary concern in requiring Mr. Sodoma to sign the release agreement.[5]

(5)  Mr. Sodoma suffered personal injuries as a result of the discrimination practices of IBM.

The only specific factual assertion is that Mr. Sodoma is within the age group, i.e., over 40, entitled to claim the benefit of the ADEA.  However, it has been established that a mere allegation of membership in a protected class is insufficient to sustain a claim for exclusion under section 104(a).  See Starrels v. Commissioner, 35 T.C. at 648; Galligan

---

[5]  Petitioners make no claim that Mr. Sodoma did not sign the release voluntarily as the document itself recites.

v. Commissioner, supra. Petitioners' other assertions are conclusory statements unsupported by specific facts as required by Rule 121. See Abramo v. Commissioner, 78 T.C. 154, 164 (1982).

Given the stipulation as to preexisting claims and in the absence of specificity in petitioners' allegations, the circumstances herein are such that respondent has made a prima facie case that the requirements for exclusion under section 104(a) as enumerated by Commissioner v. Schleier, supra, have not been satisfied. The ADEA broadly prohibits arbitrary discrimination in the workplace based on age. Commissioner v. Schleier, 515 U.S. at ___, 115 S. Ct. at 2162. Subject to certain defenses, the ADEA makes it unlawful for an employer to discharge any individual between the ages of 40 and 70 because of such individual's age. Id. at 2162. The ADEA provides for two types of damages: damages for lost wages and additional, liquidated damages where the employer's actions were willful. 29 U.S.C. secs. 216(b), 626(b) (1994). The ADEA does not permit a separate recovery of compensatory damages for typical tort remedies like pain and suffering or emotional distress. See Commissioner v. Schleier, 515 U.S. at ___, 115 S. Ct. at 2162, 2165 n.6.

Petitioners seek to draw comfort from footnote 6 in Commissioner v. Schleier, 515 U.S. at ___, 115 S. Ct. at 2165,

which suggests that, outside of the ADEA context, discrimination can result in intangible personal injuries.  Petitioners do not explain how they think they could benefit in this respect and, in any event, fail to set forth sufficient facts in respect of any such claim.

In addition to the inadequacies of petitioners' position previously discussed, we note that petitioners have the burden of proving the specific amounts of the payments allocable to claims of tort or tort-type damages for personal injuries.  Failure to meet this burden results in the entire amount being presumed not to be excludable.  See Taggi v. United States, 35 F.3d at 96; Getty v. Commissioner, 91 T.C. 160, 175-176 (1988), affd. as to this issue, revd. on other issues 913 F.2d 1486 (9th Cir. 1990).[6] But see Lane v. United States, 902 F.Supp. 1439 (W.D. Okla. 1995).  The release makes no allocation, and petitioners have set forth no facts upon which they would rely to prove an allocation. Indeed, the fact that the $69,639 payment was based on time of service and rate of pay points in the direction of its having been severance pay rather than a payment for personal injury. See Webb v. Commissioner, T.C. Memo. 1996-50, which involved the same payor and substantially the same plan as involved herein.

---

[6]  See also Whitehead v. Commissioner, T.C. Memo. 1980-508.

In sum, viewing the facts in a light most favorable to petitioners, <u>Kroh v. Commissioner</u>, <u>supra</u>, we conclude that respondent has made a prima facie case to support her motion for summary judgment and that petitioners have failed to come forward with countervailing assertions having sufficient specificity to cause us to hold that there is any material issue of fact which requires a trial.  Under these circumstances, respondent is entitled to summary judgment as a matter of law.  Rule 121(d); <u>Hibernia Nat. Bank v. Carner</u>, 997 F.2d 94, 98 (5th Cir. 1993); <u>Abramo v. Commissioner</u>, <u>supra</u>.[7]

<u>Respondent's motion for summary judgment will be granted and decision will be entered for respondent</u>.

---

[7]  See also <u>Daniels v. Commissioner</u>, T.C. Memo. 1994-591.