T.C. Memo. 1997-336


UNITED STATES TAX COURT


JULIUS R. PHILLIPS AND MARCIA G. PHILLIPS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 7996-96.                          Filed July 24, 1997.


<u>Michael Hinchion</u>, for petitioners.

<u>Edsel Ford Holman, Jr.</u>, for respondent.


MEMORANDUM OPINION


PARR, <u>Judge</u>:  This case is before us on the parties' cross-
motions for summary judgment under Rule 121.[1]  Respondent

_____

[1]    All section references are to the Internal Revenue Code in
effect for the taxable year in issue, and all Rule references are
to the Tax Court Rules of Practice and Procedure, unless
otherwise indicated.  All dollar amounts are rounded to the
                                        (continued...)

determined a deficiency in petitioners' Federal income tax in the amount of $30,920 for the taxable year 1992. The term "petitioner" refers to Julius R. Phillips.

The issue for decision is whether petitioner may exclude from gross income under section 104(a)(2) amounts received from his employer upon termination of his employment on the ground that such amounts represented damages received on account of personal injury. At the time the petition in this case was filed, petitioners resided in Nashville, Tennessee.

A motion for summary judgment is appropriate "if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law." Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994). The moving party bears the burden of proving that there is no genuine issue of material fact, and factual inferences are viewed in the light most favorable to the nonmoving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); Preece v. Commissioner, 95 T.C. 594, 597 (1990). The opposing party cannot rest upon mere allegations or denials but must set forth specific facts showing

---

[1](...continued)
nearest dollar, unless otherwise indicated.

there is a genuine issue for trial. Rule 121(d). The existence of any reasonable doubt as to the facts will result in denial of the motion for summary judgment. <u>Hoeme v. Commissioner</u>, 63 T.C. 18, 20 (1974).

The facts presented below are based on the pleadings, facts stipulated by the parties, and other pertinent materials in the record. These facts are stated solely for purposes of deciding the cross-motions. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference.

<u>Background</u>

Petitioner was employed by International Business Machines Corp. (IBM) for 28 years from September of 1964 through July of 1992. During that period, petitioner was assigned by IBM to various locations around the world and was regularly promoted. At the time petitioner ceased his employment with IBM, he was 50 years old.

In October of 1971, petitioner suffered a massive heart attack and did not return to work until March of 1972. In January of 1981, petitioner suffered a heart/ventricular aneurysm while on a business trip and was subsequently hospitalized for heart surgery. He returned to work in May of 1981. In September of 1989, petitioner suffered another heart attack while away on business but returned to work 10 days later. After the last of

these heart attacks, petitioner was no longer assigned by IBM to foreign locations, nor was he promoted.

Prior to July 31, 1992, IBM declined petitioner's request to participate in an executive training program (training program) that petitioner believed would have insured his continued employment with IBM at the same or a higher job level. Petitioner believed that IBM's decision was at least partially motivated by his age and health status.

On May 20, 1992, petitioner met with his executive supervisor, Bjorn Andersen (Andersen), regarding his employment situation, at which time he renewed his request to participate in the training program. Andersen agreed to support a renewed request on petitioner's behalf but indicated that it would likely again be denied. During the meeting, Andersen informed petitioner that his position at IBM likely would be eliminated or, at a minimum, substantially downgraded, and therefore urged that petitioner should "strongly consider" participating in IBM's Modified and Extended Individual Transition Option Program (ITO II Program), an early retirement or severance program, which allows IBM employees to resign or retire early, receiving lump-sum payments and other benefits. Andersen stressed the importance of participating in the ITO II Program to ensure petitioner's continued eligibility for health and other benefits, which might not be available to petitioner in the event his

employment was terminated after the expiration of the ITO II program.  Petitioner perceived Andersen's recommendation as a form of ultimatum.  Out of concern that he would be terminated without further benefits, petitioner agreed to participate in the ITO II program.

As a condition of receiving the lump-sum payment and benefits pursuant to the ITO II program, petitioner was required to sign a General Release and Covenant Not to Sue (the release).  Petitioner signed the release on July 31, 1992.  The release is broadly written and covers any and all possible and potential claims in contract or in tort arising from employment or termination of employment, including any claims against IBM arising under the Americans with Disabilities Act.  Americans with Disabilities Act of 1990 (ADA), Pub. L. 101-336, sec. 2, 104 Stat. 328 (current version at 42 U.S.C. sec. 12101 (1994)); Civil Rights Act of 1991, Pub. L. 102-166, sec. 102, 105 Stat. 1072 (current version at 42 U.S.C. sec. 1981a (1994)).  Pertinent sections of the release read as follows:

> In exchange for the sums and benefits which you will receive pursuant to the terms of the * * * [ITO-II Program], J. Ray Phillips[2] (hereinafter "you") agrees to release * * * [IBM] from all claims, demands, actions or liabilities you may have against IBM of whatever kind, including but not limited to those which are related to your employment with IBM or the termination of that employment. * * *  You also agree

---

[2]   The name J. Ray Phillips was typewritten in a blank space provided in the release.

that this release covers, but is not limited to, claims arising from the Age Discrimination in Employment Act of 1967, as amended, Title VII of the Civil Rights Act of 1964, as amended, and any other federal or state law dealing with discrimination in employment on the basis of sex, race, national origin, religion, disability, or age.  You also agree that this release includes claims based on theories of contract or tort, whether based on common law or otherwise.  This release does not include your vested rights, if any, in the IBM Retirement Plan, which survive unaffected by this release.

\*       \*       \*       \*       \*       \*       \*

6.    In the event of rehire by IBM or any of its subsidiaries as a regular employee, you understand that IBM reserves the right to require repayment of a prorated portion of the ITO-II Program payment.  The amount of repayment will be based on the number of weeks off the IBM payroll compared with the number of weeks' salary used to calculate your payment.

At the time of signing the release petitioner had no legal claims pending against IBM for unlawful employment practices.[3] Petitioner, however, thought that he had a claim against IBM pursuant to the ADA for compensatory and punitive damages, as well as damages for emotional distress, as a result of its alleged discriminatory treatment of him.

In exchange for signing the release and participating in the ITO II Program, petitioner received a $94,174 lump-sum payment (the payment or ITO payment).  The payment amount for each

---

[3]    Although petitioner did not file any legal claims against IBM prior to signing the release, he did make verbal complaints to Andersen, his supervisor, at a meeting which took place on May 20, 1992.

participant in the ITO II Program was calculated using the same mathematical formula based on years of service.

For the year 1992 petitioner received a Form W-2 from IBM showing wages, tips, and other compensation of $218,329. Petitioners attached a disclosure statement to their 1992 return, asserting that the $94,174 ITO payment is excludable from gross income pursuant to section 104(a)(2) as a payment received in exchange for the release and settlement of tortlike rights. Respondent determined that the ITO payment was fully taxable severance pay.

## Discussion

Except as otherwise provided, gross income includes income from all sources. Sec. 61(a); Commissioner v. Glenshaw Glass Co., 348 U.S. 426 (1955). While section 61(a) is to be broadly construed, statutory exclusions from income are narrowly construed. Commissioner v. Schleier, 515 U.S. 323, 328 (1995); Kovacs v. Commissioner, 100 T.C. 124, 128 (1993), affd. without published opinion 25 F.3d 1048 (6th Cir. 1994).

Under section 104(a)(2), gross income does not include "the amount of any damages received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal injuries or sickness". Section 1.104-1(c), Income Tax Regs., provides:

(c) Damages received on account of personal injuries or sickness. * * * The term "damages

received (whether by suit or agreement)" means an amount received * * * through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution.

Thus, an amount may be excluded from gross income only when it was received both: (1) Through prosecution or settlement of an action based upon tort or tort type rights; and (2) on account of personal injuries or sickness. Commissioner v. Schleier, supra; Wesson v. United States, 48 F.3d 894, 901-902 (5th Cir. 1995); Bagley v. Commissioner, 105 T.C. 396, 416 (1995).

Where damages are received pursuant to a settlement agreement, the nature of the claim that was the actual basis for settlement controls whether such damages are excludable under section 104(a)(2). United States v. Burke, 504 U.S. 229, 237 (1992); Thompson v. Commissioner, 866 F.2d 709, 711 (4th Cir. 1989), affg. 89 T.C. 632 (1987); Robinson v. Commissioner, 102 T.C. 116, 126 (1994), affd. in part and revd. in part 70 F.3d 34 (5th Cir. 1995). "[T]he critical question is, in lieu of what was the settlement amount paid?" Bagley v. Commissioner, supra at 406.

Determination of the nature of the claim is factual. Id.; Stocks v. Commissioner, 98 T.C. 1, 11 (1992). The first requirement is the existence of a claim based upon tort or tort type rights. Commissioner v. Schleier, supra at 335. The claim must be bona fide, but not necessarily valid; i.e., sustainable.

Robinson v. Commissioner, supra at 126; Stocks v. Commissioner, supra at 10; Sodoma v. Commissioner, T.C. Memo. 1996-275 (citing Taggi v. United States, 35 F.3d 93, 96 (2d Cir. 1994)). In this connection, we have held that claims for potential future personal injuries do not qualify for exclusion under section 104(a). Roosevelt v. Commissioner, 43 T.C. 77 (1964); Starrels v. Commissioner, 35 T.C. 646 (1961), affd. 304 F.2d 574 (9th Cir. 1962). Such holdings imply that there must be an existing claim. Moreover, while the claim need not have been previously asserted, the absence of any knowledge of the claim on the part of the employer-payor obviously has a negative impact in determining the requisite intent of the payment. Sodoma v. Commissioner, T.C. Memo. 1996-275; see also Keel v. Commissioner, T.C. Memo. 1997-278; Foster v. Commissioner, T.C. Memo. 1996-26.

Petitioner asserts that he had a bona fide claim against IBM pursuant to the ADA for infliction of emotional distress, and therefore IBM accepted his ITO II Program participation request and subsequent release in lieu of litigation. In so arguing, petitioner places heavy reliance on the Supreme Court's decision in Commissioner v. Schleier, supra. In Schleier, the Supreme Court noted that "one of the hallmarks of traditional tort liability is the availability of a broad range of damages to compensate the plaintiff fairly for injuries caused by the violation of his legal rights." Id. at 335 (citing United States

v. Burke, supra at 235. Petitioner asserts that the ADA provides
for a broad range of tortlike remedies, as contemplated by
Schleier. An aggrieved employee bringing a claim under the ADA
is entitled to seek compensatory and punitive damages, as well as
damages for emotional pain, suffering, inconvenience, mental
anguish, loss of enjoyment of life, and other nonpecuniary
losses. 42 U.S.C. sec. 1981a(b). Moreover, petitioner asserts
that IBM was aware of such claims, because he complained to his
supervisor of the grievances he had against IBM for such
employment discrimination.[4]

Respondent contends that before petitioner executed the
release, he presented his complaints only orally and only to his
supervisor. Respondent argues that petitioner's failure to send
IBM a written letter, to seek legal advice, or to lodge any
formal tortlike claim against IBM prior to and at the time of
signing the release establishes that there was no bona fide

---

[4] At a meeting with his supervisor, petitioner protested that it
would be unfair for IBM to force him out of the company given his
long record of outstanding service. Petitioner said that he was
being targeted for separation from the company due to his age and
serious health condition, which was known to IBM. Petitioner
stated that he felt pressured into signing the release to the
extent that he was made to fear losing his health benefits and to
the extent that it was implied that he had no future at IBM. Due
to his long history of heart-related problems, the prospect of
losing health coverage was extremely threatening to petitioner,
as he was then uninsurable. Thus, it was petitioner's contention
that IBM had illegally discriminated against him and that he
sustained personal injuries from being denied access to the
executive training program and from his early termination, in the
form of physical, mental, and emotional pain and suffering.

dispute between petitioner and IBM that could provide the basis for settlement.

We agree with petitioner that an employee is not required to file a formal legal action against an employer prior to settling an existing claim in order to exclude such a settlement payment from income under section 104(a)(2). Sodoma v. Commissioner, supra. Viewing the facts in the light most favorable to petitioner, it can be argued that petitioner's act of informing his supervisor of his complaints against IBM is at least some evidence of an existing dispute between the parties that could have provided the basis for settlement. Moreover, we tend to agree with petitioner that the ADA provides for a broad range of tortlike remedies as discussed by the Supreme Court in both Burke and Schleier. Thus, we find, for purposes of this motion only, that petitioner has met the first prong of excludability under section 104(a)(2) in that he has established the existence of an underlying tort-type cause of action. See Commissioner v. Schleier, 515 U.S. 323 (1995); see also Taggi v. United States, supra at 96 (a claim must be bona fide, but does not necessarily have to be sustainable or valid).

We now turn to the language of the release itself. The release in this case is the same as that in Webb v. Commissioner, T.C. Memo. 1996-50, and essentially the same as that in Sodoma v. Commissioner, supra. By its terms, petitioner released IBM from

liability for both contract and tort claims.  The release, however, does not specifically indicate that the lump-sum payment received by petitioner was paid to settle a potential personal injury claim against IBM pursuant to the ADA.  We note that where the settlement agreement lacks express language stating what the settlement amount was paid to settle, then the most important factor is the intent of the payor.  Knuckles v. Commissioner, 349 F.2d 610, 612 (10th Cir. 1965), affg. T.C. Memo. 1964-33; Stocks v. Commissioner, supra at 10.  Here, respondent argues, and we agree, that IBM did not make the payment on account of a personal injury.  The release form appears to be a standard document used by IBM for all of its employees who participate in the ITO II Program.  Moreover, IBM calculated the amount of the $94,174 lump-sum payment received by petitioner using the same mathematical formula for each participant in the ITO II Program based on the participant's individual years of service.  Finally, the release states that if petitioner were rehired by IBM, he could be required to repay some portion of the lump-sum payment based on the number of weeks off the IBM payroll compared with the number of weeks' salary used to calculate the lump-sum payment.  As in Sodoma v. Commissioner, T.C. Memo. 1996-275, and Webb v. Commissioner, supra, the lump-sum payment herein appears to have been severance pay rather than a payment for personal

injury. Severance pay, just like the pay it replaces, is taxable income.

Finally, we note that petitioner has not alleged or come forward with any evidence of the specific amounts of the payments allocable to claims of tort or tort-type damages for personal injuries. The release makes no allocation, and petitioner has not set forth any facts upon which he would rely to prove an allocation. Indeed, the fact that the $94,174 was based on petitioner's years of service points in the direction of its having been severance pay rather than a payment for personal injury. See Webb v. Commissioner, supra, which involved the same payor and substantially the same plan as involved herein.

In sum, we conclude that there is no material issue of fact which requires a trial. Accordingly, we hold that respondent's motion for summary judgment will be granted and petitioners' motion for summary judgment will be denied.

To reflect the foregoing,

An appropriate order and decision will be entered granting respondent's motion for summary judgment and denying petitioners' motion for summary judgment.