T.C. Memo. 1997-342


UNITED STATES TAX COURT


WILLIAM ROGER AND JOAN ANN THORPE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 14305-96.                    Filed July 28, 1997.


William Roger Thorpe and Joan Ann Thorpe, pro sese.

<u>Elizabeth A. Owen</u> and <u>Carol P. Nachman</u>, for respondent.


MEMORANDUM OPINION


ARMEN, <u>Special Trial Judge</u>:  This case is before the Court
on respondent's motion for partial summary judgment, filed
pursuant to Rule 121.[1]  The issue for decision is whether

---

[1]    Unless otherwise indicated, all Rule references are to the
Tax Court Rules of Practice and Procedure, and all section
                                        (continued...)

petitioners may exclude from gross income under section 104(a)(2) an amount received by petitioner William Roger Thorpe from his employer upon termination of employment on the ground that such amount represents damages received on account of personal injury. As explained in more detail below, we agree with respondent that exclusion under section 104(a)(2) is not authorized and that partial summary judgment in respondent's favor is therefore appropriate.

Background[2]

Petitioner was employed by International Business Machines Corp. (IBM) until his termination on July 23, 1992. Petitioner's termination at IBM was effected through petitioner's participation in the IBM Modified and Extended Individual Transition Option Program (ITO-II Program). The ITO-II Program allowed IBM employees to resign or retire early, receiving lump-sum payments and other benefits.

Petitioner was required to sign a General Release and Covenant Not to Sue (the release) as a condition of receiving the

---

[1](...continued)
references are to the Internal Revenue Code in effect for the taxable year in issue.

Respondent's motion was filed as a motion for summary judgment. We treat it as a motion for partial summary judgment for the reason discussed infra at note 4.

[2]     The following is a summary of the relevant facts that do not appear to be in dispute; they are stated solely for the purpose of deciding the pending motion, and they are not findings of fact for this case. See Fed. R. Civ. P. 52(a); Rule 1(a).

lump-sum payment and benefits pursuant to the ITO-II Program.

The release was broadly written and covered any and all possible

and potential claims in contract or in tort arising from

employment or termination of employment.  Pertinent sections of

the release read as follows:

> In exchange for the sums and benefits which you will
> receive pursuant to the terms of the * * * [ITO-II
> Program], [you agree] to release * * * [IBM] from all
> claims, demands, actions or liabilities you may have
> against IBM of whatever kind, including but not limited
> to those which are related to your employment with IBM
> or the termination of that employment. * * *  You also
> agree that this release covers, but is not limited to,
> claims arising from the Age Discrimination in
> Employment Act of 1967, as amended, Title VII of the
> Civil Rights Act of 1964, as amended, and any other
> federal or state law dealing with discrimination in
> employment on the basis of sex, race, national origin,
> religion, disability, or age.  You also agree that this
> release includes claims based on theories of contract
> or tort, whether based on common law or otherwise.
> This release does not include your vested rights, if
> any, in the IBM Retirement Plan, which survive
> unaffected by this release.

>     *     *     *     *     *     *     *

> 3.  This release does not waive any claims that you
> may have which arise after the date you sign this
> release.

>     *     *     *     *     *     *     *

> 6.  In the event of rehire by IBM or any of its
> subsidiaries as a regular employee, you understand
> that IBM reserves the right to require repayment
> of a prorated portion of the ITO-II Program
> payment.  The amount of repayment will be based on
> the number of weeks off the IBM payroll compared
> with the number of weeks' salary used to calculate
> your payment.

Petitioner signed the release on July 23, 1992. Neither at that time nor at any time during the 5 previous years did petitioner make any complaint or allegation against IBM, either formally or informally, for age discrimination or otherwise. However, petitioner now alleges that he thinks that he has a claim against IBM for age discrimination; petitioner also alleges that IBM is responsible for certain business failures that he suffered after the termination of his employment at IBM.

In exchange for signing the release and participating in the ITO-II Program, petitioner received a $68,279 lump-sum payment (the payment or ITO payment). The payment was based on years of service and rate of pay.

For 1992, petitioner received a Form W-2 from IBM showing wages, tips, and other compensation in the amount of $121,875.03. On October 14, 1993, petitioners filed their 1992 Federal income tax return. Petitioners reported the $121,875.03 amount on their return as wages.

On April 3, 1996, respondent issued a notice of deficiency to petitioners in which respondent determined a deficiency in petitioners' Federal income tax for 1992 in the amount of $1,271. The deficiency is attributable to respondent's disallowance of various deductions claimed on petitioners' 1992 return.

Petitioners invoked the Court's jurisdiction by filing a timely petition for redetermination.[3]

On August 13, 1996, petitioners filed an amended return for 1992 in which they reduced the amount of their gross income for 1992 by $68,279. Petitioners contend that their gross income should be reduced by such amount on the ground that the payment that petitioner received from IBM is excludable from gross income under section 104(a)(2).

On April 18, 1997, respondent filed a Motion for Summary Judgment. In the motion, respondent asserts that the issues raised in the notice of deficiency have been settled.[4] Respondent also asserts that the ITO payment is includable in petitioners' gross income as a matter of law. Relying primarily on Commissioner v. Schleier, 515 U.S. 323 (1995), respondent contends that a payment to a taxpayer may be excluded from gross income under section 104(a)(2) only when the taxpayer can establish: (1) The underlying cause of action giving rise to the payment is based upon tort or tort-type rights and (2) the payment is received by the taxpayer on account of personal injuries or sickness. With these elements in mind, respondent

---

[3]    At the time that the petition was filed, petitioners resided in Georgetown, Texas.

[4]    No stipulation of settled issues or other such stipulation has been filed by the parties regarding any of the issues raised by the notice of deficiency. Accordingly, we regard respondent's motion as one for partial summary judgment only.

contends that summary judgment is warranted on the following grounds: (1) Petitioner did not have a claim against IBM at the time that he signed the release by which he obtained the ITO payment; (2) IBM did not make the payment on account of personal injury or sickness; (3) no portion of the payment is allocated to any personal injury or other claim; and (4) a payment made to a taxpayer under the Age Discrimination in Employment Act (ADEA) is not excludable from gross income under section 104(a)(2). Included as an attachment to respondent's Motion for Summary Judgment is a letter from petitioner to respondent's counsel dated January 21, 1997, setting forth petitioners' position regarding the basis for the exclusion of the ITO payment from petitioners' gross income.

This matter was called for hearing at the Court's motions session in Washington, D.C., on May 28, 1997. Counsel for respondent appeared at the hearing and presented argument in support of the pending motion. Although petitioners did not appear at the hearing, they did file a written statement with the Court pursuant to Rule 50(c).

Petitioners' Rule 50(c) statement includes allegations that IBM is responsible for certain business failures that petitioner suffered after terminating his employment at IBM. In addition, petitioner asserts that the release that he signed at the time of his resignation from IBM represented a settlement under which he

agreed to forgo filing suit against IBM for willful age discrimination in exchange for $68,279.[5]

Discussion

A motion for summary judgment is appropriate "if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law." Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994). The moving party bears the burden of proving that there is no genuine issue of material fact, and factual inferences are viewed in the light most favorable to the nonmoving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); Preece v. Commissioner, 95 T.C. 594, 597 (1990). The opposing party cannot rest upon mere allegations or denials, but must set forth specific facts showing there is a genuine issue for trial. Rule 121(d). The existence of any reasonable doubt as to the facts will result in denial of the motion for summary judgment. Hoeme v. Commissioner, 63 T.C. 18, 20 (1974).

Except as otherwise provided, gross income includes income from all sources. Sec. 61(a); Commissioner v. Glenshaw Glass

---

[5] We note that petitioner does not expressly rely on the ADEA as the cause of action underlying the settlement. See Commissioner v. Schleier, 515 U.S. 323, 332 n.6 (1995).

Co., 348 U.S. 426 (1955).  Although section 61(a) is to be broadly construed, statutory exclusions from income are narrowly construed.  Commissioner v. Schleier, supra at 327-328; Kovacs v. Commissioner, 100 T.C. 124, 128 (1993), affd. without published opinion 25 F.3d 1048 (6th Cir. 1994).

Under section 104(a)(2), gross income does not include "the amount of any damages received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal injuries or sickness".  Section 1.104-1(c), Income Tax Regs., provides in pertinent part:

(c) <u>Damages received on account of personal injuries or sickness</u>. * * * The term "damages received (whether by suit or agreement)" means an amount received * * * through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution.

Thus, an amount may be excluded from gross income only when it was received both: (1) Through prosecution or settlement of an action based upon tort or tort-type rights; and (2) on account of personal injuries or sickness. <u>Commissioner v. Schleier</u>, <u>supra</u>; <u>Wesson v. United States</u>, 48 F.3d 894, 901-902 (5th Cir. 1995); <u>Bagley v. Commissioner</u>, 105 T.C. 396, 416 (1995).

When damages are received pursuant to a settlement agreement, the nature of the claim that was the actual basis for settlement controls whether such damages are excludable under section 104(a)(2). <u>United States v. Burke</u>, 504 U.S. 229, 237 (1992); <u>Thompson v. Commissioner</u>, 866 F.2d 709, 711 (4th Cir. 1989), affg. 89 T.C. 632 (1987); <u>Robinson v. Commissioner</u>, 102 T.C. 116, 126 (1994), affd. in part, revd. in part 70 F.3d 34 (5th Cir. 1995). "[T]he critical question is, in lieu of what was the settlement amount paid?" <u>Bagley v. Commissioner</u>, <u>supra</u> at 406.

Determination of the nature of the claim is factual. <u>Bagley v. Commissioner</u>, <u>supra</u>; <u>Stocks v. Commissioner</u>, 98 T.C. 1, 11 (1992). The first requirement is the existence of a claim based upon tort or tort-type rights. <u>Commissioner v. Schleier</u>, <u>supra</u>

at 337.  The claim must be bona fide, but not necessarily valid; i.e., sustainable.  <u>Taggi v. United States</u>, 35 F.3d 93, 96 (2d Cir. 1994); <u>Robinson v. Commissioner</u>, <u>supra</u> at 126; <u>Stocks v. Commissioner</u>, <u>supra</u> at 10.  In this connection, we have held that claims for potential future personal injuries do not qualify for exclusion under section 104(a).  <u>Roosevelt v. Commissioner</u>, 43 T.C. 77 (1964); <u>Starrels v. Commissioner</u>, 35 T.C. 646 (1961), affd. 304 F.2d 574 (9th Cir. 1962).  Those holdings imply that there must be an existing claim.  Moreover, although a claim need not have been previously asserted, the absence of any knowledge of the claim on the part of the employer-payor obviously has a negative impact in determining the requisite intent for the payment.  <u>Sodoma v. Commissioner</u>, T.C. Memo. 1996-275; see also <u>Keel v. Commissioner</u>, T.C. Memo. 1997-278; <u>Foster v. Commissioner</u>, T.C. Memo. 1996-26.

Petitioner asserts that, at the time that he signed the release, he had a bona fide claim against IBM for age discrimination and that he executed the release and accepted the ITO payment from IBM in lieu of litigation.  Respondent contends that petitioner's failure to lodge, much less even allege, any tort-type claim against IBM prior to or at the time of signing the release establishes that there was no bona fide dispute between petitioner and IBM that could provide the basis for

settlement.  We agree with respondent that the ITO payment is not excludable from petitioners' gross income.

Petitioners do not allege, nor does the record otherwise show, that petitioner ever made any formal or informal claim against IBM.  It therefore appears that there was no settlement for IBM and petitioner to reach.

However, even if we assume that the executed Release represents a settlement agreement, then for the payment to be excludable, petitioners must show that the payment is based upon (1) tort or tort-type rights, and (2) on account of personal injuries or sickness.

We now turn to the language of the release itself.  The release in this case is the same as that in Webb v. Commissioner, T.C. Memo. 1996-50, and essentially the same as that in Sodoma v. Commissioner, supra.  By its terms, petitioner released IBM from liability for both contract and tort claims.  The release, however, does not specifically indicate that the lump-sum payment received by petitioner was paid to settle a potential personal injury claim against IBM.  We note that when the settlement agreement lacks express language stating what the settlement amount was paid to settle, then the most important factor is the intent of the payor.  Knuckles v. Commissioner, 349 F.2d 610, 612 (10th Cir. 1965), affg. T.C. Memo. 1964-33; Stocks v. Commissioner, supra at 10.  Here, respondent contends, and we

agree, that IBM did not make the payment on account of a personal injury. The release form appears to be a standard document used by IBM for all of its employees who participated in the ITO-II Program. Moreover, the amount of the ITO payment was calculated on the number of years of service and petitioner's salary. Finally, the release states that if petitioner were rehired by IBM, he could be required to repay some portion of the ITO payment based on the number of weeks off the IBM payroll compared with the number of weeks' salary used to calculate the payment. As in Sodoma v. Commissioner, supra, and Webb v. Commissioner, supra, the lump-sum payment herein appears to have been severance pay, rather than a payment for personal injury. Severance pay, just like the pay it replaces, is taxable income.

Finally, we note that petitioners have not alleged or come forward with any evidence of the specific amount of the ITO payment that is allegedly allocable to claims of tort or tort type damages for personal injuries. Failure to do so results in the entire amount being presumed to be taxable. See Taggi v. United States, supra; Getty v. Commissioner, 91 T.C. 160, 175-176 (1988), affd. as to this issue and revd. on other issues 913 F.2d 1486 (9th Cir. 1990). The release makes no allocation, and petitioners have not set forth any facts upon which they would rely to prove an allocation. Indeed, the fact that the ITO payment was based on time of service and rate of pay demonstrates

its character as severance pay, rather than a payment for personal injury.  See Webb v. Commissioner, supra, Sodoma v. Commissioner, supra, and Keel v. Commissioner, supra, which involved the same payor and substantially the same plan as involved herein.

In sum, viewing the facts in a light most favorable to petitioners, we conclude that respondent has made a prima facie case to support a motion for summary judgment and that petitioners have failed to come forward with countervailing assertions having sufficient specificity to cause us to hold that there is any material issue of fact that requires a trial. Accordingly, we shall grant respondent's motion for partial summary judgment.  See Phillips v. Commissioner, T.C. Memo. 1997-336 (summary judgment granted for the Commissioner regarding taxability of payment made by IBM pursuant to the ITO-II Program); Brennan v. Commissioner, T.C. Memo. 1997-317 (same); Morabito v. Commissioner, T.C. Memo. 1997-315 (same).

To reflect the foregoing,

An appropriate order

will be issued.